In the Matter of Clarence E. DILSE (also sometimes known as C. E. Dilse), Deceased.

Ann Herr DILSE, Petitioner-Appellee,

v.

Ramona Ann Dilse LEER, formerly Ramona Ann Dilse, et al., Respondents,

Byron L. Dorgan, North Dakota State Tax Commissioner, Appellant.

Civ. No. 8985.

Supreme Court of North Dakota.

June 4, 1974.

B. Timothy Durick and Kenneth M. Jakes, Sp. Asst. Attys. Gen., for the State Tax Commissioner, Bismarck, for North Dakota State Tax Dept., appellant.

Mackoff, Kellogg, Kirby & Kloster, P. C., Dickinson, for appellee.

ERICKSTAD, Chief Justice.

This is an appeal taken from the order of District Judge Emil A. Giese, Sixth Judicial District, Bowman County, dated October 29, 1973. That order reversed an order of the Bowman County Court assessing North Dakota estate taxes in the estate of Clarence E. Dilse and directed the County Court to enter a new order assessing estate taxes in an amount some $16,856.83 less than what the Tax Commissioner claimed was owed. There is no dispute as to the facts.

The sole issue for decision is whether the district court properly computed the deduction for the marital exemption in determining North Dakota estate taxes pursuant to Section 57–37–11, N.D.C.C., at the time of decedent's death on February 28, 1969. The county court approved the method of computation of the Tax Commissioner and the district court approved the method of computation of the executors. We resolve the matter in favor of the Tax Commissioner.

The pertinent provisions of the tax law in existence at the time of Mr. Dilse's death follow:

"57–37–11. Determination of net estate.—For the purposes of this chapter, the value of the net estate of the decedent shall be determined by deducting from the value of the gross estate the following:

\*   \*   \*   \*   \*   \*

"2. An exemption to a surviving spouse determined as follows:

"a. An amount equal to the value of any interest in property which passes or has passed from the decedent to his or her surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate, *subject, however, to the limitation provided in subdivision h.*

\*   \*   \*   \*   \*   \*

"h. The aggregate amount of the deductions allowed under this subsection, computed without regard to this subdivision, shall not exceed fifty percentum of the value of the adjusted gross estate or twenty thousand dollars, whichever is the larger. The adjusted gross estate shall, for the purposes of this subdivision, be computed by subtracting from the entire value of the gross estate the aggregate amount of the deductions allowed by subsections three, four, five, six, seven, eight, nine, *ten*, eleven, twelve, thirteen, and fourteen of this section."

\*   \*   \*   \*   \*   \*

"10. Federal estate taxes paid and not refunded;" N.D.C.C. [Emphasis added.]

Section 57–37–11(2)(h) was amended in 1971 by a deletion of the reference to Subsection 10. Contrary to the urging of the executors, we cannot infer from this action in 1971 the intent of the Legislature in enacting Subsection 10 in 1951.

"Whether or not a subsequent statute sheds light upon the meaning of a former statute depends upon a number of circumstances. Where the original law was subject to very serious doubt, by permitting subsequent amendments to control the former meaning a great deal of uncertainty in the law is removed. And the legislature is probably in the best position to ascertain the most desirable construction. In addition it is just as probable that the legislature intended to

clear up uncertanties, as it did to change existing law where the former law is changed in only minor details. Thus it has been asserted that 'one well recognized indication of legislative intent to clarify, rather than change, existing law is doubt or ambiguity surrounding a statute.' The New York court has established the following test: 'The force which should be given to subsequent, as affecting prior legislation, depends largely upon the circumstances under which it takes place. If it follows immediately and after controversies upon the use of doubtful phraseology therein have arisen as to the true construction of the prior law it is entitled to great weight. . . . If it takes place after a considerable lapse of time and the intervention of other sessions of the legislature, a radical change of phraseology would indicate an intention to supply some provisions not embraced in the former statute.' " Sands, 2A Sutherland Statutory Construction § 49.11 at 265, 266.

In light of the lapse of time between the initial adoption of the statute under consideration in 1951 and its subsequent amendment twenty years later in 1971, applying the New York test, we are of the opinion that the 1971 amendment did not constitute construction of the statute as originally passed.

The Tax Commissioner urged that Section 57–37–11(2)(h), as it read at the time of decedent's death, required Federal estate taxes to be deducted from the gross value of the estate along with other deductions such as debts, funeral expenses, executor's commissions, attorney fees and costs of administration, in arriving at the adjusted gross estate, and that the deduction for the marital exemption be then determined by halving the adjusted gross estate.

The executors urge that the Federal estate taxes should not have been deducted from the gross value of the estate in determining the adjusted gross estate.

The executors would deduct the Federal estate taxes only after the deduction for the marital exemption has been taken. This approach would result in a larger marital exemption and accordingly less estate tax being due to the State of North Dakota.

For a better understanding of the two methods of computing the taxes, we borrow from the Tax Commissioner's brief the two methods.

"TAX COMMISSIONER'S METHOD:

| | |
|---|---|
| Gross Value of Estate | $2,138,242.34 |

Deductions:

| | | |
|---|---|---|
| Debts—Section 57–37–11(4) NDCC | ..$248,145.90 | |
| [Federal Income Taxes— Section 57–37–11(7) NDCC | 31,136.44] | |
| Federal Estate Taxes— Section 57–37–11(10) NDCC | 240,110.54 | |
| Funeral & Monument Expenses—Section 57–37–11(12) NDCC | 3,575.00 | |
| Commission of Executors—Section 57–37–11(13) NDCC | 39,913.34 | |
| Attorney's Fees— Section 57–37–11(14) NDCC | 40,163.34 | |
| Costs of Administration—Section 57–37–11(14) NDCC | 3,092.76 | |
| TOTAL DEDUCTIONS | | $ 606,137.32 |
| ADJUSTED GROSS ESTATE | | $1,532,105.02 |
| ONE-HALF OF ADJUSTED GROSS ESTATE | | $ 766,052.51 |
| MAXIMUM AMOUNT OF DEDUCTION FOR MARITAL EXEMPTION | | $ 766,052.51 |

Computation of tax:

| | | |
|---|---|---|
| Gross Estate | | $2,138,242.34 |

Total deductions:

| | | |
|---|---|---|
| Marital Exemption— Section 57–37–11(2) NDCC | $ 766,052.51 | |
| Other Exemptions— Section 57–37–11(1) NDCC | 4,000.00 | |
| Expenses—Section 57–37–11(3–14) NDCC | 606,137.32 | |
| TOTAL DEDUCTIONS | | $1,376,189.83 |
| NET TAXABLE ESTATE | | $ 762,052.51 |
| NORTH DAKOTA ESTATE TAX | | $ 79,211.35 |

EXECUTOR'S METHOD:

Gross Value of Estate ......... $2,138,242.34

Less Expenses (Same as Tax
Commissioner's method except that
federal estate taxes are
excluded) .................... 366,026.78

    ADJUSTED GROSS
    ESTATE ................ $1,772,215.56

    ONE-HALF OF ADJUSTED
    GROSS ESTATE (maximum
    marital exemption) ......... $ 886,107.78

Computation of tax:

Gross Estate ................. $2,138,242.34

Total Deductions:

  Marital Exemption—
  Section 57–37–11(2)
  NDCC ...........$886,107.78

  Other Exemptions—
  Section 57–37–11(1)
  NDCC ........... 4,000.00

  Other Deductions—
  Section 57–37–11
  (3–14) NDCC ...... 606,137.32

    TOTAL DEDUCTIONS ....... $1,496,245.10

    NET TAXABLE
    ESTATE ................ $ 641,997.24

    NET ESTATE TAX ........ $ 62,354.42"

The trial court's view of Section 57–37–11(2)(h), N.D.C.C., follows:

"If the Tax Commissioner has any authority to deduct the Federal Estate tax from the Gross estate before deducting the marital exemption then and in that event Subsection 10 of Section 57–37–11, N.D.C.C., reading: 'Federal estate taxes paid and not refunded' is construed to mean Federal Estate taxes paid on the property passing to the decedent's spouse."

In the instant case, the spouse's share is limited by decedent's Will to the marital deduction which passes free of Federal tax. No Federal estate tax was paid on the property passing to decedent's spouse. The Federal estate tax was paid out of the residue of the estate.

The district court's interpretation of Subsection 10 results in two meanings being given to it depending upon whether we are concerned with determining the marital exemption or are computing the North Dakota estate tax. When applied to the former, Subsection 10 means "federal estate taxes paid and not refunded on the property passing to decedent's spouse", in this case zero. When applied to the latter, Subsection 10 means "federal estate taxes paid and not refunded", in this case in excess of $240,000. Such a bi-level construction of the statute results in the maximum benefit to the taxpayer, since it maximizes exemptions and decreases .taxes. Did the Legislature intend Subsection 10 to have such a two-fold meaning when it included it in Section 57–37–11(2)(h), N.D.C.C.?

In their brief and during argument, the executors stressed the purpose of the estate tax marital exemption as originally incorporated into Federal law in 1948. The acknowledged purpose of the exemption in Federal law was to correct the inequities between the common-law States and the community-property States.

The Tax Commissioner does not dispute the idea that the North Dakota Legislature may have adopted the marital exemption in order to provide benefits similar to the Federal benefits. He asserts, however, that the State law was never intended to be exactly the same, nor has it been applied in that way. The Commissioner points out that there have always been differences between the State and Federal law in the manner in which the adjusted gross estate is computed, even though the common underlying policy of both .the State and Federal law was to allow a deduction for a certain amount of property passing to the surviving spouse.

■ Although the State and Federal laws have similar basic objectives, the Tax Commissioner argues that it is incorrect to conclude that because the Federal estate tax law intended a particular result the North Dakota law must also have intended the same result. It is the position of the Tax Commissioner that this matter falls within the prerogative of the Legislature and presents only a narrow question of statutory interpretation of State law. We agree. See State Tax Commissioner v. Tuchscherer, 130 N.W.2d 608 (N.D.1964), an estate tax case wherein we held the

Legislature has the power to classify property for estate tax purposes.

Stern v. Gray, 72 N.D. 134, 5 N.W.2d 299 (1942), was an action against the State Tax Commissioner in which the court was attempting to determine if losses incurred by the taxpayer in the sale of securities were incurred in connection with the sale or exchange of capital assets. In seeking to define capital assets, the Tax Commissioner urged the court to adopt the Federal definition of capital assets. The taxpayer responded in argument that if the North Dakota Legislature had intended to adopt the Federal definition, it would have included it in the statute. The court held that tax statutes are to be construed strictly against the Government and in favor of the citizen, but refused to arbitrarily adopt either argument without further research into the legislative intent.

"It appears that the contentions of the appellant and respondent, as to the effect to be given to the definition in the Federal Act in determining the intent of our legislature, somewhat offset each other. To adopt either theory as controlling in this case would amount to an arbitrary assumption on our part as to what was in the legislative mind when the term 'capital assets' was inserted in our law. We must search further in an attempt to ascertain the proper meaning to be ascribed to the term in question." Stern v. Gray, supra, 5 N.W.2d 299 at 302.

In the instant case, for reasons we shall state later, we need not look beyond the clear and unambiguous terms of the statute. In light of the statutory rules of construction, we are not at liberty in this case to construe the statute strictly against the Government and in favor of the taxpayer.

The applicable statutory rules of construction follow:

"1–02–02. Words to be understood in their ordinary sense.—Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained."

"1–02–03. Language—How construed. —Words and phrases shall be construed according to the context and the rules of grammar and the approved usage of the language. Technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law, or as are defined by statute, shall be construed according to such peculiar and appropriate meaning or definition."

"1–02–05. Construction of unambiguous statute.—When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C.

As we said in State Tax Commissioner v. Tuchscherer, supra, the practical construction by the Tax Commissioner of a doubtful statute is entitled to some weight in construing the statute. The instant appeal presents a stronger case for applying the Tax Commissioner's method in arriving at our decision than Tuchscherer did, because the statute under consideration here is clear and unambiguous, and the Tax Commissioner's method does not contradict the terms of the statute. Since Subsection 2(a) of Section 57–37–11, N.D. C.C., specifically refers to the limitation provided in Subdivision (h) and that subdivision requires that the adjusted gross estate be computed by subtracting from the entire value of the gross estate the aggregate amount of all deductions allowed by certain subsections, and Subsection 10, relating to Federal estate taxes paid and not refunded is to be included in the aggregate to be subtracted, no other method of computing the adjusted gross estate is permissible.

The executors also argue that the Tax Commissioner's method of computation violates the provisions of Chapter 30–21.1, N.D.C.C., known as the Uniform Estate Tax Apportionment Act. The Tax Commissioner argues that the Apportionment Act is inapplicable to the instant

case, because the decedent's Will provided for the payment of the estate taxes from the residue of the estate and does not therefore involve apportionment.

The Uniform Estate Tax Apportionment Act, Section 30–21.1–03, N.D.C.C., was intended to apportion the tax among all persons interested in the estate only if the Will did not otherwise provide. In the instant case Federal estate taxes based upon the Federal taxable estate were directed to be paid and were paid by the residuary estate. Also, in the instant case North Dakota estate taxes based upon the North Dakota taxable estate were paid by the residuary estate. The method of computing the different taxable estates for Federal and State purposes is the essence of the problem in the instant case, not the proration of the taxes. The North Dakota statute in effect at the time of decedent's death required a certain method of computation, as urged by the Tax Commissioner.

The order of the district court is reversed and the case is remanded with instructions that the North Dakota estate tax be recomputed consistent with this opinion.

VOGEL, TEIGEN, PAULSON and KNUDSON, JJ., concur.