Edwin G. CLAPP, Jr., as Executor of the
Estate of Jean Hanna Clapp,
Deceased, Appellee,

v.

CASS COUNTY, North Dakota, a Munici-
pal Corporation, et al., Appellants.

Civ. No. 9119.

Supreme Court of North Dakota.

Nov. 21, 1975.

Rehearing Denied Jan. 16, 1976.

Mervin D. Nordeng, Cass County States Atty., Fargo, for Cass County and Maxine Liversage, Treasurer of Cass County, appellants.

Robert W. Wirtz, Special Asst. Atty. Gen.; Kenneth M. Jakes, Albert R. Hausauer, Special Asst. Attys. Gen.; State Tax Department, Bismarck, for Byron L. Dorgan, State Tax Commissioner, appellant; argued by Mr. Wirtz.

Vogel, Vogel, Brantner & Kelly, Fargo, for appellee; argued by James S. Clapp, Fargo.

ERICKSTAD, Chief Justice.

This case was commenced in the District Court of Cass County within the purview of Chapter 32–23 (Declaratory Judgments), N.D.C.C. The facts are stipulated as follows:

"(1) The plaintiff, Edwin G. Clapp, Jr., is the executor of the estate of Jean Hanna Clapp. Jean Hanna Clapp died on May 9, 1972, and was a resident of Cass County, North Dakota, at the time of her death.

"(2) Cass County, North Dakota, is a municipal corporation.

"(3) Maxine Liversage is the Treasurer of Cass County, North Dakota.

"(4) Byron L. Dorgan is the Tax Commissioner for the State of North Dakota.

"(5) This action is brought within the purview of Chapter 32–23 of the North Dakota Century Code which concerns itself with Declaratory Judgments under the laws of the State of North Dakota.

"(6) Among the assets of the estate of Jean Hanna Clapp, deceased, were certain U.S. Treasury Bonds, 3½% of 1998, and 4⅛% of 1989–1994, enumerated on Supplemental Information Form of the North Dakota Estate Tax Return. The face or par value of such bonds was $240,-000.00, and the market value at the date of death according to stock and bond reports, was $187,542.52.

"(7) The total taxable estate and the tax thereon as calculated by the plaintiff as executor was as follows:

| | |
|---|---|
| Other assets | $1,238,153.30 |
| Value of U.S. Treasury bonds on date of death | 187,542.52 |
| Total Gross estate | $1,425,695.82 |
| Deductions allowable | 581,112.00 |
| | $ 844,583.82 |
| Tax calculation | $ 92,079.25 |

"(8) The total taxable estate and the tax thereon as claimed by the North Dakota Tax Commissioner was as follows:

| | |
|---|---|
| Other assets | $1,238,153.30 |
| Par value of U.S. Treasury Bonds | 240,000.00 |
| Total Gross Estate | $1,478,153.30 |
| Deductions allowable | 581,112.00 |
| Taxable estate | $ 897,041.30 |
| Tax Calculation | $ 100,997.02 |

"(9) Edwin G. Clapp, Jr., as executor of the estate of Jean Hanna Clapp, paid to the Internal Revenue Service of the United States, a portion of the applicable federal estate taxes, by submitting all of the United States Treasury Bonds listed in supplemental information form of the North Dakota Estate Tax Return (pursuant to Federal Statute, 40 Stat. 505, codified as 31 U.S.C. § 765).

"(10) Byron L. Dorgan, Tax Commissioner of North Dakota, has taken the position that an additional amount of tax is due the State of North Dakota, and that this additional amount is in the sum of $8,917.77. This additional tax is due solely to the difference between the market value and the face or par value of the United States Treasury Bonds above-described existing at the time of the death of the decedent.

"(11) The Treasury Bonds were accepted and redeemed by the United States at par.

"(12) This is a justiciable controversy within the meaning of Chapter 32–23 of the Century Code of North Dakota.

"(13) The facts are as stipulated herein, and the parties agree that the same may be submitted to the Judge of the First Judicial District, Cass County, North Dakota, for determination."

In its memorandum opinion the trial court stressed that portion of Section 57–37–21, N.D.C.C., which defines "value" for purposes of determining the value of a decedent's gross estate:

"57–37–21. Basis of appraisal * * * —1. The value of the gross estate of the decedent shall be determined by including to the extent provided in this chapter, the value at the time of the decedent's death of all property, real or personal, tangible or intangible. The term 'value' shall mean, for the purposes of this chapter, the fair market value at date of death unless provided otherwise by the provisions of this section." N.D.C.C.

In concluding that the bonds should be valued at market value rather than par value the court said:

"Fair market value is no enigma. It is a term well known to the law. It has a definite, fixed meaning upon which the courts uniformly agree. Fair market value means the price for property that a willing buyer would pay a willing seller, neither being under compulsion to buy or sell, and both being fully informed. Therefore under Sec. 57–37–21, and under the accepted meaning of fair market value, there is no room left to argue that the term 'fair market value' can also mean or include a radically differing concept, par value.

* * * * * *

"The statute requires that *all* estate assets be valued at fair market value for estate tax purposes. No exception is made for U.S. treasury bonds. Therefore such bonds must be valued at fair market value as would *any other* asset in the estate." [Emphasis in original.]

We cannot agree that the phrase "fair market value," with its generic application to "all property, real or personal, tangible or intangible," Section 57–37–21(1), N.D. C.C., mandates valuation of flower bonds at

the stock exchange quotations on the date of Mrs. Clapp's death. For reasons stated in this opinion, we reverse the judgment of the district court.

Flower bonds have caused a flurry of recent litigation because they are traded regularly on established stock exchanges at quotations substantially below their par value and because, under certain conditions, they may be redeemed at par value for the limited purpose of paying federal estate taxes due from the estate of the holder. 31 U.S.C. § 765 (1954), repealed by Pub.L.No. 92–5, § 4(a)(1), Mar. 17, 1971, 85 *Stat.* 5, as to obligations issued after March 3, 1971.

An annotation entitled "Estate Tax— Valuation of Treasury Bonds," 62 A.L.R.3d 1272 (1975), summarizes the divergent holdings:

"§ 3. General principles

"The state inheritance, succession, or estate tax statutes variously require that property of the decedent be appraised or valued at its market value, fair market value, clear market value, actual market value, or its full and true value, which the courts regard as 'market value.'

" 'Market value,' it has been pointed out, refers to the value of property as determined by the marketplace, and the courts are quite generally agreed the 'market value' is the price which a willing purchaser will pay to a willing seller in a voluntary transaction, that is, where neither is compelled to sell or buy, and where both have full or reasonable knowledge of all pertinent facts affecting value. Market value, of course, reflects the discount from face value of bonds not due for redemption until some time beyond the date of death of the deceased owner.

"From this point there is a divergence in the views of the courts dealing with the question whether United States Treasury bonds are to be valued for state inheritance or estate tax purposes at par or face value or at the lower market price. Some courts declare that market value does not vary when applied to different estates, and recognize that market value is not necessarily the same as actual value, or that the inflated value to a particular personal representative is not the market value to which the statute refers, and, construing the taxing statute strictly against the state and in favor of the taxpayer, hold that in view of the fact that Treasury bonds are traded daily, being sold by those desiring to sell and purchased by parties wishing to buy, the market value is established by the quoted market price, which reflects all factors relative to the day-to-day value of the bonds, including the fact that the Treasury Department will accept the bonds at face value in payment of federal estate tax liability in the event the purchaser of the bonds owns them at his death.

"Other courts, applying statutes which call for value for state tax purposes to be adjusted according to federal appraisement, applying judicial doctrines which require conformity of the state estate tax with the federal estate tax, or applying amplifying terms contained in the valuation statute or the administrative regulations construing such statute, declare that consideration is not to be limited to market price and that in order to determine market value other relevant facts and elements of value will be looked to, including the special value of the particular bonds to the deceased holder, taking the view that the market price does not reflect this special value to that individual and the realization of that value in the particular case. Thus, it is said that while the market quotation reflects the element of value of a United States Treasury bond due to the fact that when the holder dies, his executor may use the bonds at par value as a credit against his estate tax, obviously such sales do not reflect the full value of such a bond to the estate of the particular holder, whose death establishes the valuation date. Such a bond quoted in the market at less than par is clearly then worth par in the

hands of the decedent's executor. Some courts add that there are two markets in the particular case, one the open market and the other the United States Government (for federal estate tax purposes), and it is proper to value the bonds at the higher of these two market values." [Footnotes omitted.] 62 A.L.R.3d at 1275–1277.

The Twentieth Session of the North Dakota Legislative Assembly enacted the Estate Tax Act, S.L.1927, Ch. 267, which had provided the basic scheme for estate taxation from its approval on March 5, 1927, until a substantial revision took effect July 1, 1975. This case falls under the former estate tax laws since Mrs. Clapp died before July 1, 1975. S.L.1975, Ch. 528, § 2.

Two sections of the 1927 Estate Tax Act bear upon this case:

"§ 5. Supervision by State Tax Commissioner.] (1) The State Tax Commissioner shall have full supervision of the enforcement and collection of all taxes due under this act, and shall make such rules and regulations as may be necessary for the interpretation and enforcement thereof.

"(2) * * *

"(3) * * *

"§ 6. Basis of Appraisals.] All assessments shall be made upon appraisals of the full and fair cash value of the property to be transferred as of the date of the death of the decedent. *Where the estate is [sic] to be appraised contains stocks or bonds which are listed upon stock exchanges the assessed value shall be determined by ascertaining the range of the market and the average of prices for a period not exceeding six months before and six months after the date of death of the decedent.* In determining the value of all other property the appraisers shall take into consideration the range and values of this and similar property with the fluctuations therein for a period of time not exceeding six months before and six

months after the death of the decedent." [Emphasis added.] S.L.1927, Ch. 267.

S.L.1927, Ch. 267, § 5(1) remains intact as the first sentence of Section 57–37–19, N.D. C.C. Section 6 of that law has undergone substantial change but remains the antecedent to Section 57–37–21, N.D.C.C. In Senate Bill No. 322 the 1965 Legislature removed the phrase "full and fair cash value" as the basis for appraisal as well as the specific statutory method for appraising stocks and bonds listed upon stock exchanges. The most significant feature of the amendment is the deletion of the language providing for the specific method of determining the value of stocks and bonds listed upon stock exchanges. The bill added a subsection dealing with the determination of the value of corporate stock and securities not listed on an exchange and a subsection relating to election of an alternate method of valuation. S.L.1965, Ch. 410, § 1. In 1969 the code section was amended to define "value" as "the fair market value at date of death" unless the alternate valuation date is elected. S.L.1969, Ch. 503, § 1.

■ Among the factors to consider in interpreting a statute are the actual language, its connection with other clauses, and "the words or expressions which obviously are by design omitted." Sands, IIA Sutherland Statutory Construction, pp. 56–57 (4th ed. 1973). Considering the repeal of specific language in the statute as to appraising listed stocks and bonds, the addition of a subsection relating to corporate stock and securities not listed on stock exchanges, and the application by Section 57–37–21, N.D.C.C., of the phrase "fair market value" to all assets of an estate, we find the dissent of Judge Schaefer in a recent decision of the Illinois Supreme Court persuasive:

"The word 'market' in the statutory phrase 'market value' was not used by the legislature to describe reported market quotations. * * * These words, and the other words that are used in the statute, are only aids to the ascertainment of the actual, realistic value of the

property in question. It is that value with which the legislature and this court have heretofore been concerned. Stock market quotations are not absolute determinants of that value. They may be, in the absence of extraordinary circumstances, 'a fair and safe guide,' but other relevant factors are not to be disregarded. * * * " *In re Estate of Voss*, 55 Ill.2d 313, 317, 303 N.E.2d 9, 12–13 (1973).[1]

■ When the legislature struck the language which provided a specific method of determining the value of stocks and bonds quoted on a stock exchange and substituted nothing therefor, we must conclude that it no longer regarded listed quotations on a stock exchange as the only guide to establishing value. In striking the language which provided for an exclusive method of determining value, the legislature must have intended to permit consideration of all relevant factors. *See* Sands, IA Sutherland Statutory Construction, pp. 186–187 (4th ed. 1972).

The tax commissioner is empowered by Section 57–37–19, N.D.C.C., to "make such rules and regulations as may be necessary for the interpretation and enforcement" of Chapter 57–37, N.D.C.C. The commissioner has promulgated North Dakota Estate Tax Rules and Regulations. R–57–37–21, effective for decedents whose dates of death occurred before July 1, 1975, and whose returns were filed after June 1, 1972,[2] in pertinent part, reads:

"R–57–37–21 Basis of appraisal— * * *

"(a) Valuation of property in general. The value of every item of property includible in a decedent's gross estate, for the resident or nonresident, is the fair market value at the time of the decedent's death * * * The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell. * * * Such value is to be determined by ascertaining as a basis the fair market value at the time of the decedent's death of each unit of property includible in the gross estate. For example, in the case of shares of stock or bonds, such unit of property is a share or a bond. *All relevant facts and elements of value as of the date of decedent's death should be considered in every case in determining the value of any property.*" [Emphasis added.]

Paragraph (c) of R–57–37–21 relates to the valuation of stocks and bonds. Although the title of the paragraph does not

1. The majority in *Voss* premised its decision upon earlier decisions which had defined "market value" to mean "the value of property as determined by the market place." As a result, concluded the majority in *Voss*, if the legislature intended "to authorize a deviation from the well-established meaning of the term 'market value' * * * the statute can easily be amended to authorize the consideration of other elements of value." 55 Ill.2d at 315, 316, 303 N.E.2d at 11, 12. The ruling in *Voss* has been followed by a lower court in Illinois: *In re Estate of Barker*, 24 Ill.App.3d 959, 321 N.E.2d 709 (1975).

We are not confronted here with a judicial definition ratified by subsequent legislative inaction.

2. The record in this case does not establish when the estate tax return for Mrs. Clapp's estate was filed with the tax commissioner. We note that the executor did not deny the applicability of the regulation to the estate tax return, and we take judicial notice from the records of the tax commissioner that the return was filed on December 19, 1972, and sent unapproved to the executor on May 22, 1973.

If the regulation had not been effective as to Mrs. Clapp's estate, the tax commissioner's valuation of the bonds at par would probably have been sustainable on grounds similar to those in *In re Behm's Estate, infra*, 19 A.D.2d 234, 241 N.Y.S.2d 264, aff'd per curiam, 14 N.Y.2d 826, 251 N.Y.S.2d 475, 200 N.E.2d 457 (1964). The only testimony on Senate Bill No. 322 (39th Sess. 1965) indicated that the "bill would change the procedure to that of the Federal for valuation purposes." Committee Minutes (House Judiciary), February 26, 1975; Committee Minutes (Senate Finance and Taxation), February 1, 1965. *Bankers Trust Co. v. United States, infra*, 284 F.2d 537 (2d Cir. 1960), setting forth federal law on the issue had been decided in 1960.

limit it to corporate securities to the exclusion of government securities, R–57–37–21(c) parallels Section 57–37–21(2), N.D. C.C., which speaks only of corporate stock and securities. In addition, paragraph (c) of the rule repeatedly refers to "corporations," "issuing company," and "location of the principal business office," thereby suggesting its application only to corporate securities.

■ We have previously noted that the practical construction of a statute by the agency administering the law is entitled to some weight in construing the statute, especially where the agency interpretation does not contradict clear and unambiguous statutory language. *In re Dilse*, 219 N.W.2d 195, 200 (N.D.1974); *State Tax Commissioner v. Tuchscherer*, 130 N.W.2d 608, 615 (N.D.1967).

In the leading federal case on flower bonds, the court noted a treasury regulation that all relevant facts and elements of value should be considered in appraising the assets of an estate and declared:

> "Where the bonds cannot be so used [to pay federal estate taxes], their value to the estate is their market price, whether that be below or above par; where they can be so used, their value is at least par. Cf. *Guggenheim v. Rasquin*, 312 U.S. 254, 257, 61 S.Ct. 507, 509, 85 L.Ed. 813 [1941], where the court said: ' * * * an important element in the value of the property [fully paid life insurance] is the use to which it may be put.' * * * "
> *Bankers Trust Co. v. United States*, 284 F.2d 537, 538 (2d Cir. 1960).

*Accord, Candler v. United States*, 303 F.2d 439 (5th Cir. 1962); *Vergeer v. United States*, 74–1 U.S.Tax Cas. ¶ 12,980 (D.Or. 1974). Also see *In re Estate of Fried*, 445 F.2d 979 (2d Cir. 1971), where the same court that decided *Bankers Trust* expanded its earlier ruling by declaring that where the federal estate tax exceeds the total par value of the bonds "[a]ll that is of significance is that the bonds might have been used to pay the estate taxes." 445 F.2d at 985.

Four states, after considering other facts and elements of value than the exchange market price, have concluded that flower bonds should be appraised at par value for state estate and inheritance tax purposes: *In re Estate of Eggert*, 82 Wash.2d 332, 510 P.2d 645 (1973) (finding there are two markets—the open market and the government—for flower bonds); *In re Estate of Hart*, 30 Ohio Misc. 57, 277 N.E.2d 248 (1971), following a higher court ruling in *In re Estate of Young*, 16 Ohio Misc. 332, 243 N.E.2d 123 (1969) (concluding that the existence of two markets is a relevant fact to consider in valuing flower bonds); *In re Rosenfeld's Estate*, 62 Cal.2d 432, 42 Cal. Rptr. 447, 398 P.2d 783 (1964); and *In re Behm's Estate*, 19 A.D.2d 234, 241 N.Y.S.2d 264, aff'd per curiam, 14 N.Y.2d 826, 251 N.Y.S.2d 475, 200 N.E.2d 457 (1964) (relying on an established state policy of conformity to federal tax law and regulations).

The California opinion met two objections to the valuation of flower bonds at par:

> "To some extent, this advantageous marketability [at the death of the holder] is reflected in the over-the-counter market quotations; but, as pointed out in the *Bankers Trust Company* case, supra, 284 F.2d 537, 538, sales in the open market do not reflect the full value of such bonds in the estate of a holder whose death has made them redeemable at par value if they are used to extinguish federal estate tax liability. This fact constitutes a 'relevant fact and element of value' which must be considered in determining the market value of the bonds.
>
> * * * * * *
>
> "[The argument that *Bankers Trust Company* and *In re Behm's Estate* are applicable only to estate taxes levied on the privilege to transmit property at death, and not to California's inheritance tax levied on the privilege to receive property from a decedent] * * * overlooks the fact that any increase in

the value of the estate which will result if the bonds are used to pay federal estate taxes will inevitably be reflected in the amounts received by some or all of the legatees." *In re Rosenfeld's Estate, supra,* 42 Cal.Rptr. at 448, 449, 398 P.2d at 784, 785.

Three state courts rely on a narrower definition of statutory language: *In re Estate of Voss, supra,* 55 Ill.2d 313, 303 N.E.2d 9; *Department of Revenue v. First Nat. Bank of Oregon,* 4 Or.App. 477, 479 P.2d 256 (1971); and *In re Estate of Power,* 156 Mont. 100, 476 P.2d 506 (1970). Both Oregon and Montana determined that for purposes of their statutes the exchange market price included all relevant elements of value. For the reasons previously stated, we believe that market price does not include all relevant elements of value.

It is also clear that the difference between the market price and the par value of flower bonds is not an appreciation in value which occurs subsequent to the decedent's death:

> "Valuation at par has been held not to offend regulations which prohibit a consideration of depreciation or appreciation in value subsequent to the date of death. Valuation of Treasury bonds at par value to the extent that they can be used to pay federal estate taxes does not take into account an appreciation occurring after the date of death, since the right to use the bond for the payment of federal estate taxes arises at the time of death." Annot., *supra,* 62 A.L.R.3d at 1279.

▮▮ Because of the legislative history involved in Section 57–37–21, N.D.C.C., and the application of the phrase "fair market value" to all types of property in an estate, we find that the legislative intent was to create a general standard which itself encompasses consideration of all relevant facts and elements of value. Where the legislature has unequivocally adopted a general standard after it had repealed a specific valuation method, it reasonably follows that the agency may use its statutory authority to promulgate rules and regulations to interpret the general standard. While such interpretive "regulations do not, and are not intended to have the force and effect of law  *  *  *  [they] are given great weight by the courts in resolving doubtful meanings of the taxing laws  *  *  * " Sands, III Sutherland Statutory Construction, pp. 192–193 (4th ed. 1974).

▮ The legislative history of the statute involved, which strongly indicates the legislature's intent, does not allow us to construe "fair market value" against the government and in favor of the taxpayer, a general rule adhered to by this Court. *In re Dilse, supra,* 219 N.W.2d at 200; *Great Northern Ry. Co. v. Severson,* 78 N.D. 610, 618–619, 50 N.W.2d 889, 892–893 (1952). Additionally, the weight given to the tax commissioner's regulation requiring that all relevant facts and elements of value as of the date of decedent's death be considered in determining the value of any property, which is consistent with the statutory phrase "fair market value," supports a determination by this Court that the flower bonds used to pay federal estate taxes should be appraised at the value they actually were to the estate.

The order of the district court is reversed and the case is remanded with instructions that the North Dakota estate tax be recomputed consistent with this opinion.

PAULSON and SAND, JJ., concur.

SAND, Judge (concurring specially).

I concur in the opinion by Chief Justice Erickstad and in the syllabus.

After reviewing the chronological development of § 57–37–21, NDCC, I believe that the primary purpose and objective of the Legislature was to devise a method or formula of evaluating, for estate tax purposes, certain property, the price of which is, or readily could be, influenced by uncontrollable variables or which has no accepted fixed value.

I further believe that the method or formula was designed to apply in those instances where no sales were contemplated or made. However, where actual voluntary sales have been made by a willing seller and a willing buyer the price thus established is the equivalent of the fair market value.

The sale of the "flower" bonds was not under circumstances which are similar or comparable to condemnation or eminent domain proceedings. The par value of the bonds was available to all under the same circumstances. It was a standing offer and was not unique nor was the offer only available to the Clapp Estate. The Estate was the willing seller and the United States Government was the willing buyer in a voluntary transaction. Thus the par value in this instance, under these circumstances, is comparable and in harmony with the fair market value and the Legislature's objectives and purposes.

The fact that an executor or administrator relying upon good business acumen exercised good judgment by using the bonds to pay federal estate taxes does not alter this concept. The executors and administrators are always expected to exercise good business judgment or suffer whatever consequences may result.

Also, in the instant case the value of the Estate was increased by using the bonds at par value to pay federal excise taxes. This fact should not be overlooked. The bonds so used immediately acquired a fixed value (par) which corresponds to the fair market value of these bonds used in this manner.

ERICKSTAD, C. J., and PAULSON, J., concur.

VOGEL, Justice, joined by PEDERSON, Justice (dissenting).

The question to be decided in this case is simply whether the North Dakota Tax Commissioner must follow the statutory definition of "market value" in arriving at the assessed valuation of "flower" bonds, or whether he is at liberty to substitute a different valuation, par value, simply because the bonds can be used at a higher valuation for the specific purpose of paying Federal estate taxes.

I

North Dakota's basic scheme for estate taxation was established in 1927 by Chapter 267, 1927 Session Laws. It provided, in Section 6:

"All assessments shall be made upon appraisals of the full and fair cash value of the property to be transferred as of the date of the death of the decedent."

In 1965, this provision was amended as follows:

"The value of the gross estate of the decedent shall be determined by including to the extent provided in this chapter, the value at the time of his death of all property, real or personal, tangible or intangible." Ch. 410, S.L.1965.

In 1969, a further amendment, which remained in effect at the time of Mrs. Clapp's death, provided:

"The value of the gross estate of the decedent shall be determined by including to the extent provided in this chapter, the value at the time of the decedent's death of all property, real or personal, tangible or intangible. The term 'value' shall mean, for the purposes of this chapter, the fair market value at date of death unless provided otherwise by the provisions of this section." Ch. 503, 1969 S.L.

Since the Legislature in 1969 used the term "fair market value," which had a clear and well-defined meaning established by statute and case law [see Section III below], we are required to conclude that it used the words in the light of their established definition.[1]

1. It surely is more reasonable to assume that the Legislature intended to use "fair market value" in its accepted sense, than to assume that it meant to include "other rele-

We must presume that the Legislature had in mind these definitions of "market value" when it used the term "fair market value" in Chapter 503, 1969 Session Laws.

"In construing statutes the courts must take judicial notice of the history of the terms employed and, where statutes have been in existence for a long period of time, it must be presumed that the Legislature has at all times been aware of the meaning originally attaching to those terms. [Citations omitted.]" *Horst v. Guy*, 219 N.W.2d 153, 157 (N.D.1974).

Where a statute includes a term which is clear, certain, and unambiguous, there is no room for either administrative interpretation of that meaning [Secs. 1–02–02 and 1–02–03, N.D.C.C.; Sands, 2A Sutherland Statutory Construction (4th Ed., 1973), pp. 48, 238–239], or for judicial interpretation of it [Sec. 1–02–05, N.D.C.C.; *In re Dilse*, 219 N.W.2d 195 (N.D.1974); *Horst v. Guy, supra*; *Rausch v. Nelson*, 134 N.W.2d 519 (N.D.1965); *Gipson v. First National Bank of Bismarck*, 97 N.W.2d 671 (N.D.1959)].

## II

The fact that the executor can put the property to a special use and obtain a benefit not available to anyone else is a special circumstance which has no bearing upon market value. Market value is unaffected by the needs of one particular buyer or the special circumstances of one particular seller. This basic principle is well stated in the standard jury instruction in eminent domain cases in use in this State (North Dakota Jury Instruction 905):

"In determining market value you must give no consideration to the fact that the [State of North Dakota] desires the [interest in the] property for a particular purpose. You must disregard any special value it may have to the [State of North Dakota] as distinguished from oth-

ers who may or may not have the power to take this property. In other words, you must not consider the necessity of the taking authority. On the other hand, you must not take into consideration any peculiar value of the [interest in the] property to the owner. *Any special or peculiar value to either the buyer or seller is not the measure of market value.* You cannot consider the willingness or unwillingness of the landowner to have his property taken for [highway] purposes. The only question with respect to the property [interest] taken is the reasonable market value on the date of [taking] [trial]." (Emphasis added.)

See 4 Nichols, The Law of Eminent Domain, §§ 12.1, n. 19, 12.22[2] (3d Ed., 1975); *United States v. Easement & R. of Way*, 447 F.2d 1317, 1319 (6th Cir. 1971).

## III

As the trial court pointed out, the term "fair market value" is a term well known to the law. In North Dakota the term "market value" has been defined both by judicial opinion and by statute. *Little v. Burleigh County*, 82 N.W.2d 603, 608 (N.D.1957), defines "market value" as "the highest price for which property can be sold in the open market by a willing seller to a willing purchaser, neither acting under compulsion and both exercising reasonable judgment."

The term was defined in exactly the same way in Chapter 177, 1953 Session Laws, now codified as Section 24–01–01.1(23), N.D.C.C., relating to the code title "Highways."

We have held that the terms "market value" and "actual cash value" are synonymous. *Butler v. Aetna Insurance Co.*, 64 N.D. 764, 256 N.W. 214, 218 (1934). See also *Public Service Commission v. Montana-Dakota Utilities Co.*, 100 N.W.2d 140, 146 (N.D.1959). Other courts have held that

---

vant factors" when it repealed a method of determining value by twelve-month averaging, as the majority does. Furthermore, the term "fair market value" was put into the

law two years after the repeal of the provision for averaging, so the later provision must prevail if there is any inconsistency.

the precise term "fair market value" is synonymous with "market value" [*Bridgeport Gas Co. v. Town of Stratford*, 153 Conn. 333, 216 A.2d 439, 440 (1966)], or means exactly the same thing [*In re Valuation and Equalization of Urban and Rural Real Estate*, 180 Neb. 478, 143 N.W.2d 890, 892 (1966)]. And it has been held that the terms "market value," "fair value," and "fair market value" are synonymous and interchangeable. *Kansas City Star Co. v. Wisconsin Department of Taxation*, 8 Wis.2d 441, 99 N.W.2d 718, 723 (1959).

## IV

The precise question before us has been presented to a number of courts, both State and Federal. The leading Federal case, *Bankers Trust Co. v. United States*, 284 F.2d 537, 538 (2d Cir. 1960), held that the bonds were to be valued at par for *Federal* estate tax purposes. The decision was based in large part upon a Federal statute permitting reference to other relevant facts and elements of value in determining market value.

State court decisions upholding assessment of tax based upon par value include *In re Estate of Eggert*, 82 Wash.2d 332, 510 P.2d 645 (1973); *In re Estate of Hart*, 30 Ohio Misc. 57, 277 N.E.2d 248 (1971); *In re Estate of Young*, 16 Ohio Misc. 332, 243 N.E.2d 123 (1969); *In re Behm's Estate*, 19 A.D.2d 234, 241 N.Y.S.2d 264 (1963), affirmed per curiam 14 N.Y.2d 826, 251 N.Y. S.2d 475, 200 N.E.2d 457 (1964); *In re Rosenfeld's Estate*, 62 Cal.2d 432, 42 Cal.Rptr. 447, 398 P.2d 783 (1965).

Cases taking the opposite view, that valuation for State tax purposes is to be based on market value and not par value, include *In re Estate of Voss*, 55 Ill.2d 313, 303 N.E.2d 9, 62 A.L.R.3d 1266 (1973); *Department of Revenue v. First National Bank of Oregon*, 4 Or.App. 477, 479 P.2d 256 (1971); *In re Estate of Power*, 156 Mont. 100, 476 P.2d 506 (1970).

The latter cases hold that market value is the test, and that "market value" means what it says.

The cases adhering to the par-value rule take one of several tacks. They either argue that there are "two markets," one being the open market and the other being the United States Government [*Eggert* and *Young, supra*], or they rely upon special language in the State statutes or regulations to the effect that "other relevant facts and elements of value" or similar language may be considered in arriving at market value [*Bankers Trust Co., Hart, Young,* and *Rosenfeld, supra*], or they rely upon a special State policy established by many court decisions to conform to Federal estate tax law [*Behm, supra*]. We find none of these arguments applicable or persuasive here.

(a) Our statutory definition has been stated. It speaks of one market, not multiple markets. To say that there are two markets, and that one of them is the United States Government, is to ignore the fact that such a "market" is open to only one particular type of holder, who must die to take advantage of it, and that there is only one buyer, while at the same time there is a genuine market, with many buyers and sellers and an established price elsewhere.

(b) We have no State policy of conforming to Federal estate tax law. The Tax Commissioner asserts that such a policy is established in this State by Section 57–37–22, N.D.C.C., the second paragraph of which reads:

"It shall be the further duty of the executor, . . . to file an amended estate tax return within ninety days after any amended estate tax return is filed pursuant to the provisions of the United States Internal Revenue Code. If no amended federal estate tax return is filed but the federal estate tax return is changed or corrected, such change or correction shall be reported to the county court and to the state tax commissioner within ninety days after the final determination of such change or correction is

made and the court shall reassess the estate tax thereon. Upon receipt of an amended estate tax return or, upon notification of any change or correction made on the federal estate tax return, the county court, having jurisdiction over the estate, shall reassess the estate tax."

We understand this statute to require a report of amendments to Federal estate tax returns or assessments of Federal estate taxes, and a reassessment of the State estate tax, but we do not interpret the statute as requiring that the State reassessment be in accordance with the Federal assessment.

Our prior decisions do not indicate a general conformity of State estate tax law to Federal law, even though they are similar in some respects. See *In re Dilse, supra,* and *Messner v. Dorgan,* 228 N.W.2d 311 (N. D.1974).

(c) Nor does North Dakota law include a provision that "other relevant facts and elements of value" be taken into account. As we mentioned above, such provisions are found in the statutes or case law of several of the States adhering to the par-value rule. The Tax Commissioner points to his regulation R–57–37–21 as containing similar language. It is true that R–57–37–21 includes the following:

"All relevant facts and elements of value as of the date of decedent's death should be considered in every case in determining the value of any property."

We find no authority for inclusion of such language in this regulation, and we particularly find no authority for extension of the language to the facts of the present case. Further, the statute which the regulation purports to interpret contains this sentence:

"The term 'value' shall mean, for the purposes of this chapter, the fair market value at date of death unless provided otherwise by the provisions of this section."

Under the guise of interpretation an administrative agency cannot alter the meaning of a statute. *Messner v. Dorgan, supra,* syllabus ¶ 3.

A provision of the 1965 statute (Ch. 410, § 1, 1965 S.L., codified as § 57–37–21, subd. 2) remaining in effect at the time of Mrs. Clapp's death provided:

"In the case of stock and securities of a corporation the value of which, by reason of their not being listed on an exchange and by reason of the absence of sales thereof, cannot be determined with reference to bid and asked prices or with reference to sales prices, the value thereof shall be determined by taking into consideration, in addition to all other factors, the value of stock or securities of corporations engaged in the same or a similar line of business which are listed on an exchange."

It was suggested in argument that this statute, by its use of language permitting the consideration of "all other factors," creates a parallel with the Federal cases and State cases which rely upon language in statutes or regulations permitting reference to "other relevant facts and elements of value." However, we fail to see the applicability of this statute to the case before us. Even if we could consider United States bonds as "stock and securities of a corporation," a doubtful proposition at best, we have no doubt that the bonds in question are listed upon stock exchanges daily and the value can be determined with reference to bid and asked prices, as reference to any daily stock market report will show.

The use of the term "fair market value," synonymous with "market value," which has been repeatedly defined by statute and court decision in this State, provides a clear and concise rule of valuation.[2]

---

2.  Other jurisdictions agree that "market value" has a plain, definite, and well-understood meaning. *Atlantic Baggage & Cab Co. v. Mizo,* 4 Ga.App. 407, 61 S.E. 844, 847 (1908); *State ex rel. Snidow v. State Board*

*of Equalization,* 93 Mont. 19, 17 P.2d 68, 74 (1933); *Tidal Western Oil Corp. v. Blair,* 39 S.W.2d 1103, 1105 (Tex.Civ.App.1931). It has an established legal meaning. *Huber v. Moran,* 140 F.2d 823, 824 (8th Cir. 1944).

Neither a court nor the Tax Commissioner is at liberty to disregard the plain language of a statute using words defined by another statute. Secs. 1–02–02, 1–02–03, and 1–02–05, N.D.C.C. Further, we believe that the use of the par value as a valuation for tax purposes, even though there is a definite market value different in amount, substitutes in place of the market value a "peculiar value to an individual executor" or an "inflated value to a particular executor" [*In re Estate of Power, supra*, 476 P.2d 506, at 509]. We agree with *Department of Revenue v. First Nat. Bank of Oregon, supra*, that we are required, where the statute is not ambiguous, to value the property in question as if there were no Federal estate tax.

We are unpersuaded by the cases to the contrary, cited herein, for the reason that they rely either upon a State policy of conformity to Federal estate tax law or upon language such as "other relevant facts and elements of value" not present in our statutes, or they rely upon the dubious doctrine that there can be two markets and two market values for the same security at the same time.

If the statutory definitions of "market value" were unclear, we would adhere to the rule that tax statutes are to be construed against the government and in favor of the taxpayer. *In re Dilse, supra*; *Great Northern Railway Co. v. Flaten*, 225 N.W.2d 75 (1974). But we believe the statute is clear, and we are not at liberty to construe it at all.

PEDERSON, J., concurs.