In the Matter of the estate of MARY F. POWER, Deceased. The STATE BOARD OF EQUALIZATION of the State of Montana, Appellant, v. THOMAS C. POWER, Executor of the estate of MARY F. POWER, Deceased, Respondent.

No. 11793.
Submitted Sept. 11, 1970.
Deceided Nov. 13, 1970.
476 P.2d 506.

Edward J. Bell, argued, Board of Equalization, Helena, for appellant.

Gough, Booth, Shanahan & Johnson, Helena, Cordell Johnson, argued, Helena, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

The district court of Lewis and Clark county, the Hon. Victor H. Fall, district judge, overruled the objections of the State Board of Equalization to the Montana inheritance tax determination filed by the executor of the estate of Mary F. Power and entered its order determining inheritance tax accordingly. From this order, the State Board of Equalization (hereafter referred to as the Board) appeals.

The sole question upon appeal is whether United States Treasury bonds redeemed at par by the United States Treasury Department in payment of federal estate tax liability should be valued for Montana inheritance tax purposes at par value or at market value based on market quotations.

Mary F. Power died testate on April 21, 1968, a resident of Helena, Montana. Her will was admitted to probate and an executor appointed by the district court of Lewis and Clark county. Decedent's estate consisted in part of certain United States Treasury bonds, 3¼%, due June 15, 1983. These bonds, exclusive of accrued interest, had a par value of $50,000 and a market value of $38,500 on the date of decedent's death.

During administration of the estate, the executor applied certain of these bonds to the discharge of federal estate

tax liability. The United States Treasury Department redeemed these bonds at their par value of $35,000 pursuant to federal statute, 40 Stat. 505, codified as 31 U.S.C. § 765. The remaining bonds having a par value of $15,000 were not used in discharge of federal estate tax liability and were valued at their market value of $11,550 for Montana inheritance tax purposes. No issue is raised concerning these latter bonds.

An inventory and appraisement was filed in the estate establishing a total bond valuation of $38,500 (exclusive of accrued interest) based on market quotations on the date of decedent's death. The par value of these bonds was $50,000. When the executor petitioned the district court to have the Montana inheritance tax determined on the basis of the lower market value, the Board filed written objections contending that the higher par value of the bonds used to discharge federal estate tax liability should be used and the valuation should be increased $8,050 accordingly.

Following hearing and briefs, the district court overruled the Board's objections and entered its order determining inheritance tax based on the market value of the bonds as submitted by the executor. From this order, the Board appeals.

The basic position of the Board is that the "clear market value" for Montana inheritance tax purposes of the United States Treasury bonds is the value at which they may be redeemed in discharge of federal estate tax liability. To the extent they are so applied, the Board argues, their "clear market value" is their par value. In support of this basic contention, the Board advances three arguments: (1) that "clear market value" as used in Montana inheritance tax statutes is not confined to the same meaning in every case but must be construed in the context of the facts of the individual case; so construed the value of the bonds in the instant case is not what they would bring in the open market or the price at which they could be surrendered for cash, but their actual value to this particular estate and its distributees; (2) that

the Board in the proper exercise of its powers has adopted an administrative regulation providing that United States Treasury bonds redeemed at par in discharge of federal estate tax liability shall be valued at par for Montana inheritance tax purposes; and (3) that In re Behm's Estate, 19 A.D.2d 234, 241 N.Y.S. 2d 264, holding that United States Treasury bonds should be valued at par for New York estate tax purposes and should govern our decision in the instant case.

The basic Montana inheritance tax statute is section 91-4407, R.C.M.1947, providing in pertinent part:

"The tax so imposed shall be upon the clear market value of such property passing * * to each person * * * at the rates hereinafter prescribed * * * and in determining the clear market value of the property so passing * * * the following deductions, and no other shall be allowed; * * * federal estate taxes due or paid."

No statutory definition of "clear market value" as used in section 91-4407, R.C.M.1947 exists. In our view the term is self-explanatory without further definition. Market value by its very language simply means value in the open market, i.e. the price which a buyer willing but not obliged to buy would pay a seller willing but not obliged to sell, both having full knowledge of all pertinent facts affecting value. "Clear" as used in the phrase "clear market value" is synonymous with the word "net," i.e. the market value after allowable deductions.

From the foregoing it is apparent that "clear market value" for Montana inheritance tax purposes has but one established meaning equally applicable to all estates, and such meaning does not vary when applied to different estates. A single uniform standard is established by which value is determined for inheritance tax purposes. Thus, while facts and circumstances of the individual case may affect the market value of a given item of property, they cannot vary or alter the standard of market value by which inheritance tax valuations are determined.

The second argument advanced by the Board in support of its basic position requires only passing comment. There is simply no evidence of any written regulation by the Board on valuation of United States Treasury bonds for inheritance tax purposes. Absent such regulation, the argument has no application to the instant case.

The third argument of the Board requires more detailed treatment. The Board urges us to adopt the rationale and decision of the *Behm* case, supra, and render our decision herein accordingly. We recognize that *Behm*, In re Rosenfeld's Estate, 62 Cal.2d 432, 42 Cal.Rptr. 447, 398 P.2d 783; and Banker's Trust Company v. United States, 2 Cir., 284 F.2d 537 all hold that United States Treasury bonds redeemable at par in discharge of federal estate tax liability are properly valued at par rather than their lower market value. However, each case is bottomed on specific administrative valuation regulations of the taxing authority that have no counterpart in Montana. Thus *Behm* and *Banker's Trust Company* involve state and federal estate tax valuations respectively, and are controlled by specific valuation regulations of the United States Treasury department. In *Behm* these United States Treasury regulations had been adopted as legislative policy by the state of New York in valuing property under New York estate tax laws, while in *Banker's Trust Company* these regulations were directly applicable to valuations for federal estate tax purposes. As Montana has not adopted federal estate tax valuations nor federal regulations for computing same in valuing property for Montana inheritance tax purposes, neither *Behm* nor *Banker's Trust Company* is persuasive here.

*Rosenfeld* is more directly in point as it involves state inheritance tax valuations rather than estate tax considerations. However, *Rosenfeld* is likewise distinguishable both on the law and on the facts from the instant case and accordingly inapplicable. There, as here, the California inheritance tax law required that property, subject to inheritance tax be appraised at its market value as of the date of death. But there, unlike

the instant case, administrative regulations of the state controller provided for a method of determining the market value of stocks and bonds based on stock exchange quotations in the over-the-counter market with this further provision:

" 'In any case in which it is established that the value per share or bond on the basis of selling or bid and asked prices does not reflect the market value of a security, other relevant facts and elements of value will also be considered in determining its market value.' "

With this background, the California Supreme Court held that United States Treasury bonds redeemable at par value by an executor in payment of federal estate taxes must be appraised, for California inheritance tax purposes, not at the price quoted in the over-the-counter bond market on the date of decedent's death, but at par value to the extent the bonds can be used to pay federal estate taxes.

As Montana has no comparable administrative regulation governing valuation, the case is distinguishable on the law. It is likewise distinguishable on the facts. In *Rosenfeld* the market quotations apparently did not reflect market value, so the quoted controller's valuation regulation applied; here there is nothing to indicate that the market quotations do not establish the actual market value of the bonds.

In still another particular we disagree with the rationale of *Banker's Trust Company, Behm* and *Rosenfeld.* The underlying precept in all three cases is that sales of United States Treasury bonds in the open market do not reflect the full value of such bonds in the estate of a holder whose death has made them redeemable at par value if they are used to extinguish federal estate tax liability. The fountainhead of such notion is the following statement in *Banker's Trust Company* at page 538 of 284F.2d:

"In the sale of Treasury bonds of the class here involved the market quotation reflects the 'elements of value' due to the fact that when the holder dies his executor may use the bonds at par value as a credit against his estate tax. But obviously

such sales do not reflect the full value of such a bond to the estate of the particular holder whose death establishes the valuation date. Such a bond quoted in the market at less than par is clearly now worth par in the hands of the decedent's executor.''

In our view where, as here, "clear market value" is the standard of valuation for Montana inheritance tax purposes, a peculiar value to an individual executor not reflected in the market generally has no place in inheritance tax valuation. Such inflated value to a particular executor is not the ''clear market value'' to which the statute refers. And what better evidence of market value exists than the price commanded by such bonds in open market transactions?

The redeemability of United States Treasury bonds at par in discharge of federal estate tax liability is one element of their value reflected in the price at which they can be bought and sold in the open market. To attribute an additional value to them in the hands of an executor who is in a position to so use them not only destroys the standard of ''clear market value'' governing inheritance tax valuations, but amounts to double taxation of the same ''element of value.''

The significance of this case is not to be found in the minimal additional tax involved in the present controversy, but in the attempted erosion of the ''clear market value'' standard of inheritance tax valuation that affects the rights of every person inheriting property within the State of Montana. If the standard of valuation were other than herein set forth, inheritance taxes could be levied on the basis of inflated ''sentimental values'' of heirlooms to a particular distributee, or on the basis of an inflated value of a tract of land to a particular distributee by reason of his ownership of adjoining tracts. Clearly the Montana legislature intended no such result in enacting the ''clear market value'' standard for inheritance tax valuation.

For the foregoing reasons, we hold that valuation for state inheritance tax purposes of United States Treasury bonds redeemable at par in discharge of federal estate tax

liability must be based on their "clear market value" on the date of decedent's death rather than upon their par value for a particular purpose in the hands of the executor. We further hold that where, as here, stock market quotations fairly establish such "clear market value," the market value so established controls over their redemption value in discharge of federal estate tax liability.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, CASTLES and DALY, concur.