## IN RE ESTATE OF CRONIN

CRONIN et al., Appellants v. CRONIN, Respondent

(237 N.W.2d 171)
(File No. 11534. Opinion filed December 19, 1975)

Stephens, Riter, Mayer & Hofer, Pierre, for contestants and appellants.

Brost & Brost, Presho, for administratrix and respondent.

WOLLMAN, Justice.

Appellants, the sister and brothers of Frank Cronin, deceased, have appealed from a decree of partial distribution that awarded and set over to respondent, decedent's widow, the real estate owned by decedent at the time of his death.

Decedent died on September 7, 1972. He had executed a will on March 21, 1969; however, because he was subsequently married to respondent on December 16, 1971, the will was statutorily revoked pursuant to SDCL 29-3-7, and respondent petitioned for and was granted letters of administration following decedent's death.

In addition to livestock and other personal property, decedent owned 800 acres of land in Lyman County at the time of his death. In connection with this real estate, decedent held a grazing preference with the Central South Dakota Cooperative Grazing District covering some 3,888 acres of grazing land. Although the estate appraisers listed the grazing preference on the inventory and appraisement, they did not ascribe any value to the grazing rights in determining their appraisal of the value of decedent's real estate.

Appellants contend that the court erred in (1) adopting the land values placed upon the land by the appraisers even though

they were not licensed real estate brokers and none of them had checked comparable land sales prior to fixing the value of the land, and (2) in failing to take into consideration in determining the value of decedent's real estate the availability and accessibility of the grazing district land.

■ There is no merit in appellants' first contention. The appraisers nominated by respondent and appointed by the court included the director of equalization of Lyman County, who in fact had lived some seven or eight miles from the property in question for a period of time, the cashier of the Vivian State Bank at Vivian, South Dakota, and the manager of a bank at Kennebec, South Dakota. They testified that they were familiar with property values in the area and that they had considered comparable sales in determining the value of decedent's real estate. They also testified that they did not take into consideration the grazing permit in determining the value of the real estate, which they fixed at $76,200, the value that was finally adopted by the district county court.

Appellants' principal witness, a long-time rancher and real estate broker from Ft. Pierre, South Dakota, valued the real estate at $139,200. He testified that in reaching this figure he took into consideration the availability of the leased grazing land that decedent had utilized under the terms of his grazing preference permit. In the words of the witness, "I * * * certainly took in the availability of the unit lease and I also took into consideration of a great number of units that have sold in that area have had leases and know what they sell for above the ones where there is no unit leases."

The grazing land in question is leased by the Forest Service of the United States Department of Agriculture to the Central South Dakota Cooperative Grazing District, pursuant to 43 U.S.C.A. § 315 et seq. (the Taylor Grazing Act), which in turn allots grazing preferences or rights on the land to the members of the District. Article II, Section 4 of the bylaws of the District provides that "Upon the death * * * of any member, his interest in the District shall terminate automatically, and he shall be dealt with as in the case of a withdrawing member." Article II, Section 3 of the bylaws provides that a withdrawing member

shall surrender his membership certificate to the secretary of the District. Article VIII, Section 7 of the bylaws provides:

"When any part or all of a farm or ranch unit, which is the basis of a preference is transferred in ownership or control, and such new owner or controller becomes or is a member of the District, the Board of Directors may apportion the preference formerly attached to such unit, or proportionate part thereof, to the new owner or controller. When such a transfer occurs and the new owner or controller is not a member and does not intend to become a member, the preference attached to such unit or part thereof shall be revoked and the grazing privileges allocated to the former owner or controller shall revert to the District and shall be available for distribution in the regular manner among remaining members or other qualified applicants."

Article VIII, Section 9 of the bylaws provides that "Grazing permits and the use of grazing privileges authorized by such permits shall not be salable or transferable."

The rules of management adopted by the District pursuant to its agreement with the United States Department of Agriculture Forest Service provide:

"2.  *Grazing Preferences*

\*    \*    \*    \*    \*    \*

"B.  *Transfer of Preference*

Preference may not be transferred by sale, gift or other device. Whenever the ownership or control of all or part of commensurate property upon which a preference has been established, is transferred, the preference based on the property transferred reverts to the District. The decision as to whether the new owner or operator is entitled to any part of the preference formerly based upon such property shall be made in accordance with the Sections D, E, and F below."

Sections D, E, and F of the rules of management set forth the criteria under which the District shall determine whether the purchaser of property which has formed the basis for grazing preference is entitled to re-allocation of the preference formerly based thereon.

The secretary of the District testified that the District had not cancelled decedent's grazing preference upon decedent's death; thus the preference was still in existence upon the date of the hearing, which was held in March of 1974. The secretary also testified that he could not give an instance in which the purchaser of land having grazing rights within the District had not obtained the grazing preference from the District. In addition, one of the estate appraisers acknowledged that he knew that as a matter of practice grazing preferences have followed the land and that to his knowledge of the transactions within the District the grazing lease had followed the land in every instance.

The law regarding the inventory and appraisement of property belonging to a decedent provides in part that "Each article must be set down separately with the value thereof in dollars and cents in figures opposite to the articles respectively * * *." SDCL 30-16-4. Respondent concedes that in order to interpret the word "value" as used in SDCL 30-16-4 we must look to the statutes governing the imposition of inheritance tax. SDCL 10-40-1 provides in part that:

"The following words, terms, and phrases when used in relation to inheritance taxation shall have the meanings and application prescribed as follows:

"(1) 'True and full value in money' and 'value' shall be the usual cash selling price at the place where the property to which the term is applied shall be at the time of determining its value."

SDCL 10-40-26 provides, "The tax imposed by this chapter shall be computed upon the true and full market value in money of such property * * *."

The question whether grazing permits on government land managed by a grazing district enhance the value of a land owner's fee title land was considered by this court in *State Highway Commission v. Fortune*, 77 S.D. 302, 91 N.W.2d 675, where the court stated that:

"We recognize that the defendants' land had added value because of the attached grazing permits but this value was limited by the nature of the permits which granted no interest in the government grazing lands except to permit grazing of a certain number of cattle and which permits could be withdrawn by the Government at any time or limited by the granting of easements for highways. What the court said in *United States v. Jaramillo*, 10 Cir., 190 F.2d 300, 302, is applicable to this case: 'In determining the adaptability of the lands as a ranch, it was therefore proper to take into consideration the availability and accessibility of the permit land as an appurtenant element of value for ranching purposes, provided that consideration is also given to the possibility that the permits could be withdrawn or cancelled by the Government at any time without constitutional obligation to pay compensation therefor.' "

This holding was followed by the court in *State Highway Commission v. Bloom*, 77 S.D. 452, 93 N.W.2d 572.

Although the *Fortune* and *Bloom* cases, *supra*, involved condemnation actions, we believe that what was said therein concerning the value of grazing permits to the owner of the land forming the basis of the grant of such grazing preferences is applicable to the case at bar. Although we do not mean to hold, of course, that all standards of valuation in condemnation cases are applicable to the valuation of property belonging to decedents, we do conclude that in the light of the testimony that as a matter of practice the grazing preference rights to the land controlled by the Central South Dakota Cooperative Grazing District always follow the land that forms the basis for the grant of such preferences and that such preferences do enhance the selling price of the benefited land, the estate appraisers and the trial court were in error in not considering decedent's grazing preference in the District when determining the value of

decedent's land.* In keeping with the admonition expressed in the quotation from the *Fortune* case set forth above, the appraisers and the trial court should bear in mind when considering decedent's grazing preference in determining the value of decedent's land that what the government has granted the government can take away, and that the grazing preference conferred no vested rights vis-a-vis the District or the federal government.

We have considered respondent's contention that in the light of *United States v. Fuller,* 409 U.S. 488, 93 S.Ct. 801, 35 L.Ed.2d 16, it can no longer be said that grazing permits on federal land issued pursuant to 43 U.S.C.A. § 315b enhance the value of a land owner's fee title land when that land is taken by condemnation. The holding in the *Fuller* case, however, was based upon

> "the general principle that the Government as condemnor may not be required to compensate a condemnee for elements of value that the Government has created, or that it might have destroyed under the exercise of governmental authority other than the power of eminent domain. * * *" 409 U.S. at 492, 93 S.Ct. at 804, 35 L.Ed.2d at 21.

We do not read the *Fuller* case as requiring a holding that the grazing preference involved in the instant case cannot be said to enhance the value of decedent's fee title property.

Accordingly, the decree in question is reversed and the case is remanded for further proceedings in accordance with the views set forth in this opinion.

All the Justices concur.

---

* In contrast to the usual situation where there may very well be a desire on the part of a decedent's beneficiaries or next of kin to keep the appraised value of the estate at a rather low figure because of state inheritance tax and federal estate tax considerations, appellants in the instant case desire that the valuation be as high as possible because of the provisions of SDCL 29-1-6. In this regard, we have not overlooked respondent's argument that the values as finally determined by the district county court, including the valuation of the real estate, were accepted by the South Dakota Department of Revenue for inheritance tax purposes and by the federal government for federal estate tax purposes.