IN RE ESTATE OF KAUFMAN.

[Cite as In re Kaufman (1977), 55 Ohio App. 2d 298.]

(No. C-76047—Decided April 6, 1977.)

*Mr. William J. Brown,* attorney general, *Mr. Michael L. Moushey* and *Ms. J. Elaine Bialczak,* for the Tax Commission of Ohio, appellee.

*Messrs. Steer, Strauss, White & Tobias,* for the executrices of the estate of Louis L. Kaufman, appellants.

CASTLE, J. The decedent in the instant case, Louis L. Kaufman, purchased United States Treasury bonds from the First National Bank of Cincinnati, for the sum of $316,-313.86 on May 19, 1972, the last business day before his death. The par (face) value of these bonds was $400,000. The bonds were receivable and were in fact redeemed by the Treasury Department in payment of Federal Estate Tax liability at a par value of $400,000; however, these bonds were listed in the decedent's Ohio estate tax return at the value of $316.313.86. Thereafter, the Tax Commissioner of Ohio, pursuant to R. C. 5731.26, determined an additional tax of $5,858.02 due on the basis that the bonds should have been listed in the Ohio estate tax return at their par value, because they were used and received at that value to pay federal estate taxes. The executrices of the decedent's estate took exception to the Tax Commissioner's determination and appealed it to the Probate Division of

the Court of Common Pleas of Hamilton County. That court upheld the Tax Commissioner's determination by concluding that R. C. 5731.01(B), which defines the standard by which property included in a gross estate shall be valued, requires that the value of the bonds be included at their par value. The executrices appeal to this court urging that a correct interpretation of the above statute prohibits the valuation of the bonds in question at any other than their open market value.

To determine the proper valuation of these bonds in the estate of a decedent for Ohio estate tax purposes, we turn first to a brief discussion of the character of the bonds and of how other jurisdictions have dealt with the question of their valuation.

United States estate tax may be paid by redeeming this type of United States Treasury bond, issued before March 4, 1971, and owned by the decedent at the time of his death. These bonds, popularly known as "flower bonds," are generally redeemable at par value plus accrued interest. Such bonds are available on the market at a discount because of their low yield rate. Thus, the purchase of these bonds presents an opportunity for estate tax savings for anyone who expects a substantial estate tax on his death.[1]

For federal estate tax purposes these bonds can be used to pay estate taxes, and they are includable in the gross estate of the decedent to the extent they can be used to pay such taxes, at the higher of par (face) or market value at death plus accrued interest, even though they are selling below par at death. To the extent that the bonds cannot be used to pay estate taxes (*i. e.*, where the amount owned by the decedent exceeds the estate tax due), they are includable at market value.[2]

The federal case dealing with this subject was *Bankers*

---

[1] 34 American Jurisprudence 2d 867, Federal Taxation (1974), Para. 8764.

[2] 34 American Jurisprudence 2d 800, Federal Taxation (1974), Para. 8514; Revenue Ruling 69-489, C. B. 1969-2, 172; *Candler* v. *United States* (C. A. 5, 1962), 303 F. 2d 439.

*Trust Co.* v. *United States* (C. A. 2, 1960), 284 F. 2d 537, *certiorari denied* 366 U. S. 903. That case determined that, under the federal law, bonds receivable by the federal government at par in payment of federal estate tax must be valued at par because market sales did not reflect the full value of such a bond to the estate of the particular holder. The authority for this decision is found in Treasury Regulation 105, Section 81.10(C)(7), which states:

"In cases in which it is established that the value per bond or market share  of any security determined on a basis of selling or bid and asked prices as provided in this paragraph does not reflect the fair market value thereof, then some reasonable modification of such basis or other relevant facts and elements of value shall be considered in determining fair market value."

· Some states have adopted this federal view. Their succession tax statutes variously require that property of the decedent be appraised or valued at what is uniformly considered to be the value of the property as determined by the market place: the price which a willing buyer would pay to a willing seller where neither is compelled to buy or sell and where both have full or reasonable knowledge of all pertinent facts affecting value. Yet these states have rejected market valuation of the Treasury bonds in favor of par valuation based on their interpretation of respective state policies and statutes.[3]

For example, the New York Court in *Matter of Behm,* note 3, *supra,* applied a state policy of conforming its method of valuation to that of federal estate tax law, for the purpose of maintaining uniformity of administration, to arrive at the determination that the bonds must be taxed at par value for New York estate tax purposes. The Washington case of *In re Estate of Eggert,* note 3, *supra,* determined that par valuation was the correct standard on the basis of a rather broad definition of fair market value: that "all uses to which property is adopted and

---

[3]*In re Estate of Rosenfeld* (1965), 62 Cal. 2d 432, 398 P. 2d 783; *Matter of Behm* (1963), 19 App. Div. 2d 234, 241 N. Y. S. 2d 264, affirmed 14 N. Y. 2d 826, 200 N. E. 2d 457; *In re Estate of Eggert* (1973). 82 Wash. 2d 332, 510 P. 2d 645.

might in reason be applied" must be considered, including the fact that property is "pecularily adopted to some particular use." That court also stated that the peculiar use to which the government applied these bonds "increases the value of the succession; the succession having been increased, the tax to the higher value of the successon will be applied."

Likewise, the California Supreme Court, construing a state statute and regulation, also reached the conclusion that these bonds were to be valued at par value for state death tax purposes. Their statute, requiring market value appraisal of a decedent's property, is supported by a regulation that states:

"In any case where it is established that value per share or bond on the basis of selling or bid or asked price does not reflect the market value of a security, other relevant facts and elements of value will also be considered in determining its market value."

Cal. Adm. Code, tit. 18, Section 13951(f).

The California court stated that one of the chief reasons for the purchase of the bond is the advantageous marketability at the death of the holder. It found that the United States government in fact created an additional market for the holder of the bonds to the extent his estate had federal estate tax liability to be extinguished. It further determined that although this advantageous marketability was reflected to some extent in over-the-counter market quotations, the full value to the holder was not so reflected, and that fact constituted a relevant fact to be considered in determining market value.

Having considered the basis for and the logic of the decisions of other jurisdictions that have adopted valuation at par of United States Treasury bonds in the estate of the decedent, we must now determine whether Ohio law, specifically R. C. 5731.01(B), also allows for valuation of this type of bond at par value in the decedent holder's Ohio estate tax return, or whether market value is to be applied. Ohio has no policy or regulation such as New York's which mandates conformity with federal estate tax valuation principles. Nor does it have a

broad definition applicable to a determination of market value as found in the state of Washington. The rather restrictive Ohio statute providing for the method of valuing property to be included in a decedent's estate has no supporting regulation which would authorize a different standard for valuation where the market value of a security is not reflected in its selling, bid or asked price as does California or the United States Treasury Department. R. C. 5731.01(B) states simply:

"The value of any property included in the gross estate shall be the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. All relevant facts and elements of value as of the valuation date shall be considered in determining such value."

Thus, the legislature has codified the definition of the term "market value" as that term has been traditionally defined by the courts of Ohio. See *Giesy* v. *Cincinnati, Wilmington, and Zanesville R. R. Co.* (1854), 4 Ohio St. 308.

Our research has disclosed two Ohio cases interpreting Section 5731.01(B): *In re Young* (1968), 16 Ohio Misc. 332; *In re Estate of Hart* (1971) 57 Ohio Op. 2d 116. These cases held that the valuation of the bonds in the estate of the decedent must be at par value for Ohio estate tax purposes. Yet the Supreme Court of Ohio interpreted the valuation standard set out in R. C. 5731.01(F), Inheritance Tax, which contained almost identical language to R. C. 5731.01(B), Estate Tax, differently in the case of *In re Estate of Sears* (1961), 172 Ohio St. 443. In that case, in paragraph two of the syllabus, the court held:

"Market value is the fair and reasonable cash price which can be obtained in the open market not at a forced sale *or under peculiar circumstances* but at voluntary sale between persons who are not under any compulsion or pressure of circumstances and who are free to act; or, in other words, between one who is willing to sell but not compelled to do so and one who is willing to buy but not compelled to do so." (Emphasis added.)

In view of the language of the Ohio statute, we are unable to adopt the California position that two markets are created at the death of the holder. The executor of the deceased's estate is not a willing seller as he must redeem the bonds to the extent there is federal estate tax liability or subject himself to an action for the breach of a fiduciary duty. Nor can the Treasury Department be considered a willing buyer when it accepts bonds at par value, since it has previously contracted itself by the terms of the bonds to do so. Yet the Ohio statute unequivocally sets out a "willing buyer-willing seller" standard. Thus, it cannot be said that the statute authorizes the recognition of an additional market created by the United States government at the date of decedent's death.

The Ohio statute also states that "all relevant facts and elements of value as of the valuation date shall be considered in determining such value," "such value" referring back to the market valuation standard set out in the preceding sentence. It is true that the estate has the right to use these Treasury bonds in a manner that would reflect credit to it, rather than selling on the open market, by redeeming the bonds at par value in payment of federal estate taxes. This advantageous factor is reflected in over-the-counter market quotations and is a relevant fact as to market value. However, to attribute additional value to these bonds in the hands of an executor who is in a position to use them would be to change the standard of market value as defined by the legislature. The peculiar value of these Treasury bonds to an individual executor is not reflected in the market generally and has no place in Ohio estate tax valuation under the language of R. C. 5731.01(B). See *In re Estate of Power* (1970), 156 Mont. 100, 476 P. 2d 506. Likewise, the fact that the value of the succession may be increased by the United States Treasury Department's redemption of these bonds at par value is not relevant in determining the open market value of the bonds.

We find the language of R. C. 5731.01(B) to be clear in establishing a market valuation standard for property in the gross estate of a decedent for Ohio estate tax pur-

poses. Only facts and elements relevant to market value, by the language of this statute, may be used to determine the value of decedent's property regardless of its character. We agree with the Illinois Supreme Court when it stated in the case of *In re Estate of Voss* (1973), 55 Ill. 2d 313, 315, 303 N. E. 2d 9, 11:

"[United States Treasury bonds of the type under consideration are traded daily] * * * being sold by those desiring to sell and purchased by parties wishing to buy. The price at which they are selling on any particular day can be ascertained from market quotations printed in various publications. Quotations such as these are proper for the court to consider in determining the market value of the bonds. * * * In such a market place, all factors relative to the day-to-day value of the bonds are reflected in the price, including the fact that the Treasury Department will accept the bonds at face value in payment of Federal estate tax liability in the event the purchaser owns them at his death."

It is a fundamental principle of Ohio law that a strict construction of taxing statutes is required, and their provisions may not be extended by implication beyond the clear import of the language used. *Clark Restaurant Co.* v. *Evatt* (1945), 146 Ohio St. 86, *Davis* v. *City of Willoughby* (1962), 173 Ohio St. 338. As the legislature has not seen fit to qualify the standard set out by the language of R. C. 5731.01(B) for special situations, nor to authorize a deviation from the market value standard, we cannot accept the Probate Court's determination that United State Treasury bonds redeemable by the Treasury Department, at par, are includable in the decedent's estate tax return at face value. On this basis, we reverse the judgment of the Court of Common Pleas, Probate Division, and remand for further proceedings to determine the value of the United State Treasury bonds included in the decedent's estate in conformity with this opinion.

*Judgment reversed and cause remanded.*

SHANNON, P. J., and BETTMAN, J., concur.