*In re* McCORNACK ESTATE

(NATIONAL BANK OF DETROIT v DEPARTMENT OF
TREASURY)

1. Taxation—Bonds—Federal Estate Tax—Inheritance Tax—
Value of Bonds.

Certain United States Treasury bonds which are redeemed at par
value by the executor of the estate of a deceased bond owner as
a credit against Federal estate taxes should be evaluated at par
value, rather than the over-the-counter value on the date of
decedent's death, for purposes of Michigan's inheritance tax.

2. Bonds—United States Treasury Bonds—Market—Willing
Buyer.

The fact that the United States Government is obligated to
purchase certain United States Treasury bonds at par value
does not mean that the government is an unwilling buyer for
purposes of determining whether sales to the government
constitute a "market" for the bonds because the Congress and
the President are free to change that policy at any time.

3. Taxation—Inheritance Tax—Privilege of Receiving Property.

The inheritance tax is a tax upon the privilege of receiving
property by inheritance.

4. Taxation—Inheritance Tax—Bonds—Par Value—Market—
Privilege of Receiving Property.

Certain United States Treasury bonds, redeemed at par value by
the executor of an estate as a credit against Federal estate
taxes, should be valued at par value for purposes of the Michi-
gan inheritance tax because as a practical matter the Federal
market for these bonds consists of a substantial market at par
value which is thus the clear market value, and the beneficiar-
ies of an estate enjoy the privilege of receiving par value from
the bonds, which privilege is taxable in full under the Michigan

References for Points in Headnotes
[1, 2, 4] 42 Am Jur 2d, Inheritance, Estate, and, Gift Taxes § 264.
[3] 42 Am Jur 2d, Inheritance, Estate, and Gift Taxes §§ 4, 5.

inheritance tax statute (MCLA 205.201 *et seq.;* MSA 7.561 *et seq.*).

Appeal from Wayne, Joseph B. Sullivan, J. Submitted June 16, 1977, at Lansing. (Docket No. 29984.) Decided September 7, 1977. Leave to appeal applied for.

Petition in probate court by National Bank of Detroit, Marjorie M. Ward and Duncan Brian, executors of the estate of Daisy G. McCornack, deceased, for a redetermination of the Michigan inheritance tax payable by the estate, alleging that certain United States Treasury bonds in the estate should be appraised at their over-the-counter value, rather than their higher par value. The probate court redetermined the value of the bonds at the lower figure. The Department of Treasury appealed to the circuit court, which affirmed. The Department of Treasury appeals by leave granted. Reversed, and the original probate court determination is affirmed.

*Beaumont, Smith & Harris* (by *James E. Beall*), for petitioners.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Terry P. Gomoll,* Assistants Attorney General, for respondent, Department of Treasury.

Before: D. E. Holbrook, Jr., P. J., and Allen and D. R. Freeman,* JJ.

Allen, J. Should United States Treasury bonds which were redeemed at par value by an executor in payment of Federal estate taxes be appraised for Michigan inheritance tax purposes at par value

---

* Circuit judge, sitting on the Court of Appeals by assignment.

or at the lower discounted price quoted in over-the-counter bond markets on or near the date of decedent's death? This question has never been addressed in Michigan. Other jurisdictions are almost evenly divided in their answer thereto.

The facts are simple and undisputed. Daisy Gertrude McCornack died May 20, 1970, leaving an estate of approximately $1,300,000. Among the assets were certain low interest United States Treasury bonds which were redeemed at par value in partial payment[1] of the Federal estate tax liability. The bonds, popularly known as "flower bonds" are redeemable at par value by estate executors provided (1) the holder owns the bonds at the time of death; (2) the bonds are properly includable as an asset of the estate; and (3) the executor redeems the bonds with the United States Treasury Department and uses the proceeds to pay any Federal estate tax owed by the estate.[2] The total par value of the redeemed bonds was $298,000. The over-the-counter value of the bonds on the Friday before and the Monday after decedent's death was $234,065.93 according to the Wall Street Journal.

The probate court first appraised the bonds at their par value but, upon the executor's petition for redetermination, reversed its earlier order and entered a final order evaluating the bonds at their over-the-counter value of $234,065.93. The Michigan Department of Treasury filed a claim of ap-

---

[1] The Federal tax exceeded the total par value of the bonds. Thus there were no bonds "left over" which could only have been sold at the open market price. Flower bonds in an amount exceeding the tax assessed should obviously be evaluated at their over-the-counter value. In the instant case all flower fund bonds in the estate were used to pay the tax.

[2] For an extended discussion of the nature of flower bonds *see* Annotation: *Valuation of United States Treasury Bonds for State Inheritance or Estate Tax Purposes,* 62 ALR3d 1272.

peal in the Circuit Court for Wayne County which, following a hearing, affirmed the final order of the probate court. On leave granted the case now comes to us for resolution.

Presently five states and the Federal courts assign flower bonds their par value and four states assign such bonds over-the-counter value when calculating state death transfer taxes. Those jurisdictions assigning par value fall into five categories. (1) States whose statutes specifically permit the probate judge to take into consideration "all factors and elements of value" when computing the value of estate assets;[3] (2) States whose revenue departments have promulgated rules regarding evaluation which permit the probate court to take into consideration "all factors and elements of value" when computing the value of estate assets;[4] (3) States which follow Federal tax law by interpreting state inheritance statutes according to the interpretation given similar Federal statutes by Federal courts;[5] (4) States with a body of established case law holding that "fair" or "clear market value" may be interpreted broadly enough to permit the probate court to consider factors other than the open market price in evaluating estate assets;[6] (5) States which, while relying upon one of the four justifications mentioned above, also adopt the "two market theory" by holding that where an executor of an estate possessing flower bonds

---

[3] See In re Estate of Young, 16 Ohio Misc 332; 243 NE2d 123 (1969).

[4] See Clapp v Cass County, 236 NW2d 850 (ND, 1975); Estate of Rosenfeld, 62 Cal 2d 432; 42 Cal Rptr 447; 398 P2d 783 (1965).

[5] See In re Estate of Behm, 19 App Div 2d 234; 241 NYS2d 264, aff'd 14 NY2d 826; 251 NYS2d 475; 200 NE2d 457 (1963), which followed the Federal precedent in Banker's Trust Co v United States, 284 F2d 537 (CA 2, 1960), cert den 366 US 903; 81 S Ct 1047; 6 L Ed 2d 204 (1960).

[6] In re Estate of Eggert, 82 Wash 2d 332; 510 P2d 645 (1973).

wishes to sell, he may do so on one of two markets —the open market or the Federal redemption market—and the state properly should assign value on the basis of the higher of the two values.[7]

The four jurisdictions which value flower bonds at the open market value at the time of decedent's death are states which do not have statutes, regulations or case law *specifically* allowing the probate court to consider all factors or elements of value, *and* do not have an established policy of conforming state death taxes to the Federal tax scheme. *In re Estate of Voss*, 55 Ill 2d 313; 303 NE2d 9; 62 ALR3d 1266 (1973);[8] *In re Estate of Power*, 156 Mont 100; 476 P2d 506 (1970); *Department of Revenue v First National Bank of Oregon*, 4 Ore App 477; 479 P2d 256 (1970); *Estate of Aul v Haden*, 154 W Va 484; 177 SE2d 142 (1970).

With this background we now turn to the question before us—which category of cases should Michigan follow? Appellee forcefully and eloquently argues that Michigan's inheritance tax act[9] prescribes "clear market value" as the standard of evaluation and, unlike the statutes in the par value states, does not authorize the probate court to look to "other relevant facts and elements of value" or "other proofs". Consequently, says appellee, Michigan courts should adopt the rationale followed by Illinois and other jurisdictions operating under the "clear market value" standard. In rebuttal, plaintiff-appellant argues that both the spirit of the Michigan inheritance tax act and the express wording of § 13 thereof authorize

---

[7] *See In re Estate of Young, supra,* fn 3, and *Estate of Eggert, supra,* fn 6.

[8] Two judges dissented on the grounds that other relevant factors might be looked at in determining value.

[9] MCLA 205.201 *et seq.;* MSA 7.561 *et seq.;* especially MCLA 205.213; MSA 7.574.

"other proof" of value,[10] and that assignment of par value is not a violation of the clear market value standard since realistically par value is the true market value at the instant of death—there being two categories of flower bonds, *viz:* (1) Bonds which have satisfied all the requirements for estate tax redemption and for which the market price is their par value; and (2) Bonds which have not satisfied all of the requirements and can only be sold at the lower over-the-counter price.

Having examined all of the cases and the Michigan statute, it is our conclusion that Michigan should follow the majority rule and evaluate the bonds at their par value. We simply believe that the better logic and reasoning demand such a result even though the Michigan act is not identical to the statutes in the other majority jurisdictions. Flower bonds are purchased on the open market prior to the decedent's death. At the time of purchase they command less than par value since it is only upon the instant of death that a second "market" at par value becomes available. The price quotations in the Wall Street Journal reflect the public open market. They do not reflect the specialized market which only trades with estates. Consequently, we find no violation of the statutorily prescribed "clear market value" standard in appraising these bonds at par value. Section 13 authorizes the probate judge to look to "other proof". In our opinion the probate court, on

---

[10] The relevant portion of § 13 reads:

"The report of the appraiser shall be filed in the office of the judge of probate, and from such report *and other proof* relating to any such estate before the judge of probate, the judge of probate shall forthwith, as of course, determine the clear market value of all such estates as of the date of transfer, and the amount of tax to which the same is liable, or the judge of probate may so determine the clear market value of all such estates and the amount of tax to which the same are liable without appointing an appraiser." (Emphasis added.) MCLA 205.213; MSA 7.574.

redetermination, looked to the wrong market when it took the Wall Street Journal quotations. As was stated by the highly respected panel of Judges Hand, Swan, and Medina in *Bankers Trust Co v United States,* 284 F2d 537, 538 (CA 2, 1960), *cert den* 366 US 903; 81 S Ct 1047; 6 L Ed 2d 204 (1961):

> "Ordinarily, of course, the Wall Street quotations of any particular class of bonds reflect the price at which the bonds 'would change hands between a willing buyer and a willing seller.' In the sale of Treasury bonds of the class here involved the market quotation reflects the 'elements of value' due to the fact that when the holder dies his executor may use the bonds at par value as a credit against his estate tax. But obviously such sales do not reflect the full value of such a bond to the estate of the particular holder whose death establishes the valuation date. Such a bond quoted in the market at less than par is clearly now worth par in the hands of the decedent's executor."

We acknowledge that *Bankers Trust Co, supra,* is distinguishable because the court referred to Treasury Department regulations which directed the taxing authorities to consider "all relevant facts and elements of value". We believe, however, that this distinction played only a minor role in the court's opinion and basically the court was motivated by the reasoning set forth in the quotation above.

Both parties refer to the dictionary definition of "clear market value" appearing in Black's Law Dictionary.[11] In his written opinion rejecting par value, the probate judge stated that since the

---

[11] "With regard to inheritance tax, highest price obtainable. * * * sum which property would bring on a fair sale by a willing seller not obliged to sell to a willing buyer not obliged to buy, or fair market value, or cash value." Black's Law Dictionary (Rev 4th ed, 1969), p 318.

United States Government was obligated by stat-
ute to purchase such bonds it was not "a willing
buyer not obliged to buy". The same point was
made by the majority of the Illinois court in *In re
Estate of Voss, supra,* and by the Supreme Court
of West Virginia in *Estate of Aul, supra.* We do
not agree. To conclude that the government is an
unwilling buyer because Congress has by statute
mandated purchase at par value is totally falla-
cious. Congressional action together with signature
by the President indicate a voluntary decision to
purchase a certain class of bonds whenever they
become available. The same parties could change
that policy at any time.

Nor can we agree that the Federal market is so
special and limited that it may not be fairly char-
acterized as a market. This argument, also ad-
vanced by the probate court, contains suggestions
of the world of Adam Smith. While it may have
been sound theory in the past century, it no longer
is true in the modern state. In fiscal 1969, $420
million in estate taxes were paid with United
States Government obligations.[12] In *Estate of Ro-
senfeld,* 62 Cal 2d 432; 42 Cal Rptr 447; 398 P2d
783 (1965), *supra,* fn 4, the Federal market was
recognized as a genuine and viable market.

> "It is common knowledge that one of the chief rea-
> sons for the purchase of the type of bond here involved
> is the advantageous *marketability* at the death of the
> holder, the United States Government having created
> an *additional market for the bonds* in which the estate
> of the holder is assured of an opportunity to obtain par
> value to the extent there is federal estate tax liability
> that may be extinguished by their surrender." (Empha-
> sis added.) 62 Cal 2d at 434.

---

[12] 1971-1 United States Code Congressional and Administrative
News, pp 957–973.

Though the Michigan inheritance tax statute admittedly does not confer upon the treasury department or its officials the degree of latitude found in the majority states and the Federal government to look to all factors or other elements of value, neither is the Michigan act as restrictive as the minority states.[13] Evaluation at par value is entirely compatible with the nature of the tax. The inheritance tax is a tax upon the privilege of receiving property by inheritance. *In re Fox's Estate,* 154 Mich 5, 10; 117 NW 558 (1908), *rev'd on other grounds* 159 Mich 420; 124 NW 60 (1909). Evaluation at over-the-counter value is incompatible with the tax since it would allow the receipt of $63,934.07 inheritance-tax free. Had the executor received the lower value of $234,065.93 it would have had to sell other estate assets amounting to $63,934.07 and the "privilege of receiving property by inheritance" would have been diminished by $63,934.07. As was stated in *In re Brackett Estate,* 342 Mich 195; 69 NW2d 164 (1955), a decision involving construction of the Michigan inheritance tax:

"Nor will it be forgotten, in any question of statutory tax interpretation, that taxing is a practical matter and that the taxing statutes must *receive a practical construction.* While they will not be extended by implication * * * *neither will the words thereof be so narrowly interpreted as to defeat the purposes of the act."* 342 Mich at 205. (Emphasis added.)

Applying this rule to the instant situation we find that as a practical matter a substantial market existed for these bonds at par value; that this market was the clear market value rather than a

---

[13] None of the over-the-counter jurisdictions had statutory provisions similar to Michigan's § 13.

contrived or artificial value and that as a practical matter, the beneficiaries have enjoyed the privilege of receiving from said bonds $298,000. Under the statute this privilege is taxable in full rather than in part.

Nothing in our decision violates the "clear market value" rule laid down in *In re Fish's Estate,* 219 Mich 369, 378; 189 NW 177 (1922), or, as appellee erroneously claims, opens the door to permit every probate judge to write his own regulations as to value. Our decision is limited to the factual situation involved in this case.[14]

The orders of the Wayne County Circuit Court and the Wayne County Probate Court granting the petition for redetermination are reversed and the original determination of tax issued by the Wayne County Probate Court December 13, 1974, is affirmed.

No costs, a public question being involved.

---

[14] United States Treasury bonds issued after March 3, 1971, cannot be used to pay Federal estate taxes. However, as of January 31, 1975, in excess of 3.5 billion dollars of flower bonds were outstanding and may be used in the future to pay Federal estate taxes.