IN RE ESTATE OF KAUFMAN : STRICKER ET AL., EXRCS., APPELLEES, *v.* LINDLEY, TAX COMMR., APPELLANT.

[Cite as In re Estate of Kaufman 1978), 53 Ohio St. 2d 231.]

(No. 77-633—Decided March 29, 1978.)

232

*Messrs. Steer, Straus, White & Tobias* and *Mr. Charles H. Tobias, Jr.,* for appellees.

*Mr .William J. Brown,* attorney general, *Ms. J. Elaine Bialczak* and *Mr. Michael L. Moushey,* for appellant.

CELEBREZZE, J. The instant cause concerns valuation of United States Treasury H bonds issued prior to March 4, 1971. Provision was made in the public debt chapter of the United States Code (Section 765, Title 31) authorizing receipt of such bonds at par plus accrued interest in payment of taxes on the estate of the deceased holder. Because of this unique capacity for effecting federal estate tax savings these bonds are popularly referred to as "flower bonds." However, to the extent that flower bonds can be used to pay estate taxes, they are includible in the federal gross estate at the higher of par value or market value on the date of death, plus accrued interest, even though they may be selling below par on the date of the holder's death.[1]

The sole issue presented by this appeal is whether the bonds in question should have been included in the decedent's Ohio estate tax return at their par value, or at their market value on the date of Mr. Kaufman's death.

The definition of the term "market value"[2] has been

---

[1] See 34 American Jurisprudence 2d 750, Federal Taxation (1978), Section 8514; Revenue Ruling 69-489, C. B. 1969-2, 172.

[2] Paragraph two of the syllabus of *In re Estate of Sears* (1961), 172 Ohio St. 443, defines market value as follows:

"Market value is the fair and reasonable cash price which can be

codified within R. C. 5731.01(B), which section provides as follows:

"The value of any property included in the gross estate shall be the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. All relevant facts and elements of value as of the valuation date shall be considered in determining such value."

It is the position of the Tax Commissioner that daily market price quotations from a stock exchange cannot establish the proper value of these particular bonds for estate tax purposes. Rather, it is contended that by dying Kaufman "enabled his estate to 'sell' the bonds to the Federal Government at face value to pay federal death taxes," thereby creating another market for the estate which was "different from the market in which living persons dealt." Thus, appellant urges that under the present circumstances par value is equivalent to this unique "market" value.

We find this argument to be untenable. As the appellate court below so succinctly observed:

"* * * The executor of the deceased's estate is not a willing seller as he must redeem the bonds to the extent there is federal estate tax liability or subject himself to an action for breach of fiduciary duty. Nor can the Treasury Department of the Federal Government be considered a willing buyer when it accepts bonds at par value, since it has previously contracted itself by the terms of the bonds to do so. Yet the Ohio statute unequivocally sets out a 'willing buyer-willing seller' standard. Thus, it cannot be said that the statute authorizes recognition of an additional market created by the United States Government at the date of decedent's death."

---

obtained in the open market, not at a forced sale or under peculiar circumstances but at voluntary sale between persons who are not under any compulsion or pressure of circumstances and who are free to act; or, in other words, between one who is willing to sell but not compelled to do so and one who is willing to buy but not compelled to do so."

Appellant contends further that, by virtue of the second sentence in R. C. 5731.01(B), any factor which would influence the value of the disputed bonds must be considered in the determination of their value. In effect, appellant argues that the valuation of property included in a gross estate must reflect what the property is worth to the estate, not what the property was worth to a decedent, *viz.*, the open market price on the date of death.

Clearly, appellant's line of argument confuses market value, the standard defined by the General Assembly in R. C. 5731.01(B), with actual value, in this instance the peculiar augmented value realized only when the executrices were able to utilize the flower bonds to extinguish federal estate tax liability. Although the second sentence of R. C. 5731.01(B) states that "[a]ll relevant facts and elements of value as of the valuation date shall be considered in determining such value," we believe it apparent that "such value" refers to the market valuation standard set forth in the preceding sentence.

In *In re Estate of Power* (1970), 156 Mont. 100, 476 P. 2d 506, the Supreme Court of Montana, in a situation similar to the one herein, construed the Montana inheritance tax statute, which specified the "clear market value" standard. The court held that the value, for state inheritance tax purposes, of United States Treasury H bonds, was the market value, and not the face value of the bonds, commenting as follows at page 106:

"In our view where, as here, 'clear market value' is the standard of valuation for Montana inheritance tax purposes, a peculiar value to an individual executor not reflected in the market generally has no place in inheritance tax valuation. Such inflated value to a particular executor is not the 'clear market value' to which the statute refers. And what better evidence of market value exists than the price commanded by such bonds in open market transactions?

"The redeemability of United States Treasury bonds at par in discharge of federal estate tax liability is one element of their value reflected in the price at which they

can be bought and sold in the open market. To attribute an additional value to them in the hands of an executor who is in a position to so use them not only destroys the standard of 'clear market value' governing inheritance tax valuation, but amounts to double taxation of the same 'element of value.' " Accord *In re Estate of Voss* (1973), 55 Ill. 2d 313, 303 N. E. 2d 9.

We share the belief that the potential for tax savings inherent in flower bonds is a relevant factor in the determination of their market value, and as such is undoubtedly reflected in over-the-counter market quotations. Because this court may not sanction any deviation from the market value standard set forth in R. C. 5731.01(B) we must conclude that the Probate Court erred in determining that the United States Treasury H bonds should have been listed at par value in the decedent's Ohio estate tax return.

The parties have stipulated that decedent died on a Saturday, having purchased the bonds in question on the last preceding business day. Accordingly, in this instance the purchase price constituted the market value on the valuation date. It is therefore unnecessary to remand this cause for a determination of the value of the bonds, as had been ordered by the appellate court below.

As modified, the judgment of the Court of Appeals is hereby affirmed.

*Judgment affirmed.*

HERBERT, W. BROWN, P. BROWN and SWEENEY, JJ., concur.

O'NEILL, C. J., and LOCHER, J., dissent.

LOCHER, J., dissenting. The market value of these "flower bonds" is clearly $400,000. Indeed, they can be marketed so readily for $400,000 that, should the executrices have sold them for less, the beneficiary would and should have cited them for removal—and with just cause—for malfeasance and misfeasance.

To reckon the value of the bonds at $316,313.86 is to

ignore not only the reality that the United States Treasury will redeem them for $400,000 but also the precise mandate expressed by the General Assembly in R. C. 5731.01 (B) that "[a]ll relevant facts and elements of value as of the valuation date shall be considered in determining such value."

In *Bankers Trust Co.* v. *United States* (C. A. 2, 1960), 284 F. 2d 537, certiorari denied, 366 U. S. 903, the valuation of "flower bonds," which could be used at par value as a credit against the federal estate tax, rather than at their lower market price at the date of death, was premised upon the provision in paragraph (a) of Treasury Regulation 105, Section 81.10, that "[a]ll relevant facts and elements of value as of the applicable valuation date should be considered in every case." I can perceive no logical difference between the preceding two sentences that would justify this aberrant interpretation of R. C. 5731.01(B) espoused by the majority. The California Supreme Court determined that, for the purpose of the inheritance tax imposed by California, "flower bonds" should be appraised at their par value to the extent that they can be used to pay federal estate taxes. *Estate of Rosenfeld* (1965), 62 Cal. 2d 432, 398 P. 2d 783. The applicable regulation therein provided:

" 'In any case in which it is established that the value per share or bond on the basis of the selling or bid and asked prices does not reflect the market value of a security, other relevant facts and elements of value will also be considered in determining its market value.' (Cal. Admin. Code, tit. 18, Section 13951[f].) "

In determining that "bid" and "asked" prices did not reflect the market value of the "flower bonds," the California Supreme Court reasoned, at page 434, as follows:

"It is common knowledge that one of the chief reasons for the purchase of the type of bond here involved is the advantageous marketability at the death of the holder, the United States Government having created an additional market for the bonds in which the estate of

the holder is assured of an opportunity to obtain par value to the extent there is federal estate tax liability that may be extinguished by their surrender.

"To some extent, this advantageous marketability is reflected in the over-the-counter market quotations; but, as pointed out in the *Bankers Trust Company* case, *supra*, 284 F. 2d 537, 538, sales in the open market do not reflect the full value of such bonds in the estate of a holder whose death has made them redeemable at par value if they are used to extinguish federal estate tax liability. *This fact constitutes a 'relevant fact and element of value' which must be considered in determining the market value of the bonds.*" (Emphasis added.)

*Matter of Behm* (1963), 19 A. D. 2d 234, 241 N. Y. S. 2d 264, similarly held that "flower bonds" used at their par value toward payment of federal estate tax should be valued at their par value and not a lower quoted market value in a New York estate tax return. Recognizing a state policy of conforming its method of valuation with the federal estate tax law, the court, after citing the *Bankers Trust Co.* case, *supra*, further stated, at page 236:

"What better evidence of value can there be of an asset of an estate than the price which the estate's representative secures for the property, in this case the bonds?"

In support of its conclusion, the majority relies upon *In re Estate of Voss* (1973), 55 Ill. 2d 313, 303 N. E. 2d 9. Its application to the cause *sub judice*, however, was clearly belied within that very decision, wherein the court stated, at page 316:

"The various cases cited to us which reach a conclusion contrary to that expressed in this opinion construe statutes and regulations which contained standards of valuation different from those contained in the Illinois statute. These statutes and regulations authorize the court to consider other factors than market value, such as 'other relevant facts and elements of value.' *In re Estate of Rosenfeld*, 62 Cal. 2d 432, 42 Cal. Rptr. 447, 398 P. 2d 783; *In re Estate of Young* (P. Ct. 1969), 16 Ohio Misc. 332, 243 N. E. 2d 123; *Bankers Trust Co.* v. *United States* (2d

Cir. 1960), 284 F. 2d 537, cert. denied, 366 U. S. 903, 6 L. Ed. 2d 204, 81 S. Ct. 1047."

Also, *In re Estate of Power* (1970), 156 Mont. 100, 476 P. 2d 506, fails to buttress the majority's resolution of the instant cause. The Supreme Court of Montana, in that case, found, in distinguishing *Bankers Trust Co.,* supra, *Behm,* supra, and *Rosenfeld,* supra, that no statute or regulation authorized the court to consider "other relevant facts and elements of value." Both *In re Estate of Voss,* supra, and *In re Estate of Power,* supra, furthermore involved an inheritance tax, while Ohio has imposed an estate tax. See *Estate of Aul* v. *Haden* (1970), 154 W. Va. 484, 177 S. E. 2d 142.

In neither of the cases relied upon by the majority was the court confronted with a mandate similar to that contained in R. C. 5731.01(B) that "[a]ll relevant facts and elements of value as of the valuation date shall be considered in determining such value." Where courts were faced with analogous directions imposed only by regulations or state policy, the instructions were not whimsically cast aside, but adhered to. It is readily apparent that the General Assembly, through the incorporation of wording in R. C. 5731.01(B), effective July 1, 1968, identical in all relevant aspects with the wording construed in the *Bankers Trust Co.* case, supra, decided in 1960, sought to effectuate in Ohio the same standards of valuation dictated in the federal estate tax. The majority has defeated this legislative attempt, leaving a result that is indeed quizzical. While the bonds are valued by their issuer and sole beneficiary of their sale, the United States Treasury, at par, $400,000, for the federal estate tax, the state of Ohio and its residents, who have derived no benefit from the bonds, are forced to value these bonds not at par but at their lower market value, on the pretext of the "willing buyer and the willing seller" standard of valuation that is also found in the federal estate tax.

Therefore, I must respectfully dissent.

O'Neill, C. J., concurs in the foregoing dissenting opinion.