In the Matter of the ESTATE of Arndt E. DAHL, Deceased.

**NATIONAL BANK OF SOUTH DAKOTA as one of the executors of the Estate of Arndt E. Dahl, Deceased, Plaintiff and Respondent,**

v.

**SOUTH DAKOTA DEPARTMENT OF REVENUE, Defendant and Appellant.**

No. 12753.

Supreme Court of South Dakota.

Argued Nov. 8, 1979.

Decided Dec. 24, 1979.

---

Wayne F. Gilbert of Gunderson, Farrar, Aldrich, Warder & DeMersseman, Rapid City, for plaintiff and respondent.

John Dewell, Asst. Atty. Gen., Pierre, for defendant and appellant; Mark V. Meierhenry, Atty. Gen., and Gregory J. Stevens, Asst. Atty. Gen., Pierre, on the brief.

DUNN, Justice.

Defendant South Dakota Department of Revenue (Department) appeals from a lower court decision that set the taxable value of decedent Arndt E. Dahl's United States Treasury bonds at the over-the-counter cash selling price. Respondent is plaintiff National Bank of South Dakota, one of the executors of decedent's estate. We affirm.

Decedent died testate on November 14, 1977. Among his assets were certain United States Treasury bonds having a par value of $350,000, payable February 15, 1995. On the date of decedent's death, the over-the-counter cash selling price of the bonds was $270,593.75. Pursuant to 26 U.S.C. § 6321, these bonds were redeemed with the United States Treasury at their par value of $350,000 in payment of federal estate taxes applicable to decedent's estate. For purposes of South Dakota inheritance taxation, however, the bonds were valued at their over-the-counter cash selling price by the circuit court. The matter was submitted to the trial court on briefs and written stipulation of the parties.

SDCL 10–40–26 is the operative statute for valuation of property subject to our state inheritance tax. It reads: "The tax imposed by this chapter shall be computed upon the true and full market value in money of such property * * *." Likewise, "true and full market value in money" is defined by SDCL 10–40–1(1) as follows: " 'True and full value in money' and 'value' shall be the usual cash selling price at the place where the property to which the term is applied shall be at the time of determining its value."

The key terms in these statutes are "money" and "cash selling price." We are required by SDCL 2–14–1 to give these terms their ordinary meaning. In so doing, it is clear that redeeming the bonds at par for purposes of paying federal estate taxes is not what the legislature meant when it employed the above-quoted terms. Transactions in discharge of federal estate tax liability are simply not "sales."

Only those elements that actually affect the cash selling price should be considered in determining valuation. In *In re Estate of Cronin*, 89 S.D. 632, 237 N.W.2d 171 (1975), we determined that governmentally conferred benefits, i. e., a state-granted grazing preference on 4,000 acres of land, could be considered in the valuation process, but only because the preference had a clear effect upon the cash selling price. Similarly, in *Rau v. Fritz*, 81 S.D. 311, 134 N.W.2d 773 (1965), elements that reasonably affected the cash selling price of a hotel were considered in determining value.

South Dakota Administrative Rule § 64:80:03:05 provides that other factors become relevant when the value of a bond is not truly reflected by the selling or bid price. We find, however, that the method used here to determine over-the-counter price, i. e., the price at the nearest available market, was proper and accurately reflects the value of the bonds, and we need not consider other factors. In addition, even if we were to consider other factors, such factors must have some bearing upon the cash selling price in accordance with SDCL 10–40–1(1). The cited administrative rule does not grant power to consider elements having no bearing on cash selling price. All administrative rules must be consistent with laws passed by our legislature. *Cavanagh v. Coleman*, 72 S.D. 274, 33 N.W.2d 282 (1948).

The cases cited by the Department in which the par value was considered proper in determining valuation for state inheritance tax purposes are all distinguishable. *Clapp v. Cass County*, 236 N.W.2d 850 (N.D. 1976), and *In re Estate of Eggert*, 82 Wash.2d 332, 510 P.2d 645 (1973), involved statutes using the term "fair market value" with reference to valuation. This term is vastly different from the term "cash selling price." Furthermore, the *Clapp* case was issued shortly after the North Dakota legislature had removed the phrase "full and fair cash value" from its valuation statute. The North Dakota legislature had clearly conveyed its desire to broaden the number of factors to be considered in determining valuation. *In re Estate of McCornack*, 78 Mich.App. 135, 259 N.W.2d 396, 398 (footnote 10) (1977), involved a statute, not an administrative rule, that specifically allowed " '*other proof* relating to any such estate' " to be considered in the valuation process. *In re Rosenfeld's Estate*, 62 Cal.2d 432, 42 Cal.Rptr. 447, 398 P.2d 783 (1965), dealt with a statute using the term "market value" and with regulations allowing consideration of other relevant factors. Two cases allowing the use of par value for state taxation purposes were based upon statutes specifically directing that par values be used. *In re Behm's Estate*, 19 A.D.2d 234,

241 N.Y.S.2d 264 (1963), aff'd 14 N.Y.2d 826, 251 N.Y.S.2d 475, 200 N.E.2d 457 (1964); *Stanback v. Coble*, 30 N.C.App. 533, 227 S.E.2d 175 (1976).

There are many courts that agree with the principle that the over-the-counter value is proper for state valuation purposes. In all of these cases, the courts were dealing with statutory terms not as precise as South Dakota's "usual cash selling price," and yet they held the over-the-counter valuation to be proper. *Stein v. Idaho State Tax Commission*, 577 P.2d 798 (Idaho 1978); *In re Estate of Voss*, 55 Ill.2d 313, 303 N.E.2d 9 (1973); *In re Estate of Power*, 156 Mont. 100, 476 P.2d 506 (1970); *In re Estate of Kaufman*, 53 Ohio St.2d 231, 374 N.E.2d 142 (1978); *Estate of Aul v. Haden*, 154 W.Va. 484, 177 S.E.2d 142 (1970); *Second Nat. Bank of Richmond v. State, Etc.*, 366 N.E.2d 694 (Ind.App.1977); *Department of Revenue v. First Nat. Bank of Oregon*, 4 Or.App. 477, 479 P.2d 256 (1971). The *Kaufman* case is particularly significant because the court was faced with a state statute containing language as liberal as the aforementioned regulation of the Department, and it still chose to adopt the over-the-counter valuation method. The *Kaufman* court observed that the federal redemption procedure does not involve a willing buyer or a willing seller because both the executor and the federal government are bound by contract to carry through with redemption. To classify redemption as a factor relevant to determination of "usual cash selling price" is not correct.

If our legislature wishes to tax bonds at their par value, the statutes can be easily amended. As it is, we are bound by the words of the valuation statutes.

The judgment of the trial court is affirmed.

All the Justices concur.